## George Blain *vs.* Enos Everitt, William H. Marr and William P. Hull.

*Landlord and Tenant — When Equity will not intervene between Landlord and Tenant.*

Where the relation of landlord and tenant exists, and through failure of the landlord to take the necessary steps, as provided by law, to terminate the tenancy at its expiration and summarily eject the tenant holding over, the tenant has acquired the right to continue the tenancy at sufferance, or for another year, a Court of Equity will not intervene and oust him because he is a bad manager, or is vicious and disagreeable to his landlord, or is insolvent.

Appeal from the Equity side of the Circuit Court for Prince George's County.

The bill in this case, the object and purport of which are fully stated in the opinion of the Court, was filed on the 29th of January, 1872, by the appellees against the appellant. On the bill duly sworn to, and the accompanying exhibits, the Court (Ford, J.) passed an order directing an injunction to issue as prayed, and appointing a receiver to take charge of the real estate mentioned in the bill, &c., and requiring the defendant to deliver the same to the receiver, subject to the future order of the Court. The defendant, on the 12th of February, 1872, filed his answer verified by affidavit, and on the same day appealed from the order of the Court.

The cause was argued before BARTOL, C. J., BOWIE, GRASON, MILLER and ALVEY, J.

*Samuel H. Berry*, for the appellant.

The Circuit Court erred in ordering the injunction:

1st. Because there were no sufficient allegations in the bill to authorize the granting of an injunction, as the appellees had their full and complete remedy at law. *Pfeltz vs. Pfeltz*, 14 *Md.*, 376; *Hubbard vs. Mobray*, 20 *Md.*, 167; *Amelung vs. Seekamp*, 9 *G. & J.*, 468; *Baugher vs. Crain*, 27 *Md.*, 36; *Gelston vs. Sigmund*, 27 *Md.*, 334; *Fort vs. Groves*, 29 *Md.*, 188; *Mayor, &c., of Frederick, vs. Groshon*, 30 *Md.*, 436.

2d. Because the prayer in the bill was only to restrain the appellant from the use and occupation of the houses and land, and to appoint a receiver, and the appellant was not restrained by the injunction from the alleged use and appropriation by him of the rents, issues and profits of the lands since they have been in his possession, nor was he required by the bill to account for the same.

3d. Because the improper cultivation of the land, and the depreciation of its value under the management of the appellant, as charged, and the appropriation of the rents and profits of the estate are stated to have occurred since the 1st of January, 1871, when it is charged that the appellant held the property of the appellees as tenant, and if responsible at all, is responsible in that capacity.

4th. If the appellant held said property as tenant, and had no other right or title to the same, the appellees had their full and complete remedy at law against him for the recovery of the rent, and upon legal notice to quit the premises, they could recover possession of the property. 1 *Code, Art.* 53, *sec.* 1; *Lamar vs. McNamee*, 10 *G. & J.*, 116; *Anderson vs. Critcher*, 11 *G. & J.*, 450.

The order appointing a receiver should not have been passed:

1st. Because the bill does not contain such a statement of facts as rendered it necessary for the safety and protection of the property to place it in the hands of a receiver. *Blondheim, et al. vs. Moore,* 11 *Md.,* 365 ; *Voshell vs. Hynson,* 26 *Md.,* 94.

2d. Because Courts of Equity exercise this power with great precaution, and only when they are satisfied by abundant proof that it is absolutely necessary for the protection of the rights of the parties interested in the property. *Blondheim, et al. vs. Moore,* 11 *Md.,* 365 ; *Uhl vs. Dillon,* 10 *Md.,* 500 ; *Rich, et al. vs. Levy, et al.,* 16 *Md.,* 74 ; *Knighton vs. Young,* 22 *Md.,* 370, 371 ; *Haight & O'Connell vs. Burr,* 19 *Md.,* 130.

The Court erred in ordering the injunction and appointing the receiver, for the further reasons :

1st. Because the charge of fraud in a bill is not of itself sufficient to warrant the Court in interfering by injunction, or by the appointment of a receiver, but the reasons upon which the apprehensions are based, must be distinctly stated, to enable the Court to determine whether they are well founded, and whether they show such a state of facts as will warrant its interference upon an *ex parte* application, without notice. *Roman vs. Strauss,* 10 *Md.,* 89 ; *McCann vs. Taylor,* 10 *Md.,* 418 ; *Hankey vs. Abrahams,* 28 *Md.,* 588.

2d. Courts of Equity will not interfere by injunction, or the appointment of a receiver, where the right of the complainant to the property is not clear and undisputed, nor will they interfere where the defendant is in possession of the property as joint owner and as tenant. *Cherry vs. Steine, et al.,* 11 *Md.,* 1 ; *State vs. Jarrett & Harwood,* 17 *Md.,* 309 ; *Thomsen vs. Diffenderfer, et al.,* 1 *Md. Ch. Dec.,* 489 ; *O'Bryan vs. Gibbons,* 2 *Md. Ch. Dec.,* 9 ; *Kipp vs. Hanna,* 2 *Bl.,* 26 ; *Williamson vs. Wilson,* 1 *Bl.,* 418.

*Frank. H. Stockett* and *C. C. Magruder,* for the appellees.

On this appeal this Court is confined to the case made by the bill, and does not examine the answer. *Wagner & Mar-*

*shall vs. Cohen,* 6 *Gill,* 97 ; *Alexander vs. Worthington,* 5 *Md.,* 471 ; *Guyton vs. Flack,* 7 *Md.,* 398 ; *Haight & O'Connell vs. Burr,* 19 *Md.,* 132 ; *Craufurd vs. Craufurd,* 22 *Md.,* 458.

Does the bill with the exhibits accompanying the same make out such a case as justified the Court in granting the injunction and appointing a receiver?

The averments in the bill on this appeal, whatever may be the real state of the case, must be taken as true. *Haight & O'Connell vs. Burr,* 19 *Md.,* 133.

The averments in the bill are ample to justify, nay, to require the order to be passed.

The granting of an injunction is a matter resting in the sound discretion of the Court. *Reddall vs. Bryan, et al.,* 14 *Md.,* 444. But whenever the complainant shows a case which, in the exercise of such discretion, justifies the interposition for such relief, the Court will not hesitate to apply the remedy. 2 *Story's Eq.,* secs. 919–928.

And though the Court will not interfere by injunction to restrain a trespasser, merely because he is a trespasser, yet it will so interfere where the injury alleged is irreparable, or where full and adequate relief cannot be had at law, or where the injury complained of is of a character to work destruction of the property, or where it is necessary to prevent multiplicity of litigation. *Shipley vs. Ritter,* 7 *Md.,* 408 ; *Gilbert vs. Arnold,* 30 *Md.,* 29 ; *Mayor, &c., of Frederick, vs. Groshon,* 30 *Md.,* 436 ; *Wagner & Marshall vs. Cohen,* 6 *Gill,* 104.

This case recommends itself with a threefold claim to equitable interposition :

*First.* The injury complained of is averred to be irreparable, and the facts are stated which show it so to be.

*Second.* No full and adequate relief could be had at law for such wrongs and injuries, even against a solvent party ; but here it is averred that the defendant is insolvent, and therefore irresponsible ; and to turn over the complainants to a Court of Law for redress, would be mockery.

*Third.* The injury complained of, and that threatened, is such as would work the destruction of the property, and the injunction was absolutely necessary as the only remedy to prevent and restrain this.

The appointment of a receiver in the case was eminently necessary, not only to preserve the property from destruction as to its improvements, by reason of the threats of injuring the same, made by the defendant, but also to protect the crops and the rents and profits, which were in imminent danger of being wasted and misapplied by an insolvent and irresponsible party. *Clark vs. Ridgely,* 1 *Md. Ch. Dec.,* 70 ; *Williamson vs. Wilson,* 1 *Bl.,* 418 ; *Hannah K. Chase's Estate,* 1 *Bl.,* 206 ; *Wagner & Marshall vs. Cohen,* 6 *Gill,* 104 ; *Blondheim, &c., vs. Moore,* 11 *Md.,* 365 ; *State vs. North. Cen. R. R. Co.,* 18 *Md.,* 193.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order granting an injunction and appointing a receiver.

The bill and exhibits show that the complainants having purchased at trustee's sale a tract of land in Prince George's county, containing about seven hundred and ninety-two acres, made a written agreement with the defendant, on the 12th of January, 1870, by which they agreed to sell and he to purchase, one undivided eighth part thereof for $2,968.13, payable in instalments ; he also agreeing to pay one-eighth of all expenses incurred in the purchase of the whole tract, and in improving the same, including the building of houses, since the 10th of November, 1869, and to move with his family on the land and farm a portion of it on such terms as are usual in that part of Maryland.

Under this contract the complainants put the defendant in possession of about one-half the land, but difficulties having subsequently arisen between them, owing, as the bill charges, to the bad conduct of the defendant and his neglect and mismanagement of the property of the complainants, who had in

the meantime received their deed for the land from the trustee, determined to terminate their connection with the defendant, and proposed and entered into another agreement with him on the 12th of January, 1871, annulling, as they aver, the former contract.

So far as it is necessary to state the terms of this latter agreement, it appears the complainants thereby agree to pay the defendant $100, to refund to him the money he had then advanced under the previous contract, amounting to $1,855.08, to allow him and his family to remain in the dwelling house, and to work certain designated parts of the land, which he on his part agreed to work to the best advantage and in such crops as he thought proper, and "*to vacate the dwelling house and land on or before the 1st day of January, 1872;*" he was also *to have one-half of all the crops,* including the provender made on the land during the year 1871, and they reserved the right to enter and make improvements upon the property and to seed the land in the fall of 1871.

The bill filed on the 29th of January, 1872, contains numerous statements and charges. We shall notice only those the complainants' counsel have deemed most material. They are in substance as follows: The complainants aver they have in good faith performed their part of the contract of January, 1871, have paid to the defendant the $100, and tendered to him the whole amount he had advanced under the agreement of January, 1870, which he has declined to receive, and have permitted him with his family to occupy the dwelling house, and to work and cultivate, as their tenant, for the year 1871, that part of the land they agreed he should work. They charge that his management and cultivation since January 1871, has been very destructive and injurious to the land itself and the buildings thereon; that he has permitted a large new tobacco house to be blown down and destroyed, for want of care and proper attention; that he has refused, and still refuses, to pay the rent due for the year

Blain *vs.* Everitt, *et al.*

1871—being one-half the crops—and is converting the same to his own use in reckless and utter violation of his said contract; that during the year 1871 he has cut and used for fuel valuable timber trees, has permitted all the fencing to be destroyed, has refused to repair the fences as he should have done, although complainants have furnished on the place four or five thousand rails which have become more or less destroyed; that on the 4th of January, 1872, they, in pursuance of the agreement of January, 1871, demanded of him to vacate at once with his family the said dwelling house and lands, but he has positively refused to do so, and fraudulently threatens to destroy the buildings remaining on the place, and to destroy every thing on the place belonging to complainants, and to injure the land and premises in every manner and way he can, and they have reason to believe and fear from his repeated menaces and threats that he will do so; that he has already done in fraud of their rights great injury to the property and committed repeated and great waste and damage to it. They aver the property is not safe and secure in his hands, nor are the last nor will the future rents and profits of the same be safe in his hands, but the same will be recklessly and fraudulently destroyed and wasted so that they will be utterly lost to the complainants who are entitled to the same; and they also charge and aver that the defendant is insolvent, and that they will have no security for their indemnity if he is permitted to remain in possession and to receive the rents and profits of the property. They further charge that he fraudulently intends and affirms that he will hold on to the possession of the property in utter disregard of complainants' rights and of his solemn agreement as aforesaid, and they believe and therefore charge, if he is permitted to remain in possession, that he will wantonly destroy and injure the property, and they will not be able to make the improvements on the lands by the erection of buildings which they design to do, and their loss will be great and irreparable. In view therefore of the fraudulent

proceeding of the defendant and the wrongs and injuries already done to the complainants, and those threatened to be done by him, they are advised they are entitled to relief in the premises by the granting of an injunction and the appointment of a receiver.

The prayer of the bill is that an injunction be issued enjoining, restraining and forbidding the defendant from further using *or occupying* the said property, lands and dwellings thereon, and enjoining and forbidding him to attempt further *to cultivate* the said lands, or *any part thereof*, or in any manner interfering with the same or any part thereof, and also for appointment of a receiver for the said property with power and authority to *take possession* of and preserve the same in all respects, and *to farm and cultivate the said land*, and to collect, receive and take care of all the rents, crops, issues and profits thereof, to be accounted for in this Court, until the further order of the Court, and for full and general relief in the premises.

On this bill with the accompanying exhibits the Court passed the order from which this appeal is taken, directing the injunction to issue *as prayed*, and at the same time appointing a receiver to take charge of the *real estate* mentioned in the bill, and to *cultivate, manage and collect the rents and profits due or arising therefrom*, and requiring the defendant to *deliver the same* to the receiver, subject however to any future order of the Court.

It is plain the whole scope and purpose of this bill, the ultimate object it seeks to attain, is to oust the defendant of possession of the land and dwelling house. This has been done by means of a receiver and the writ of injunction in the form asked for and granted. These have been made to perform the office of a writ of *habere facias possessionem*. Thus the main object of the bill has been attained by the order appealed from, passed on an *ex parte* application, without allowing the defendant an opportunity to be heard. No authority or precedent for such a proceeding has been cited,

and it would be strange if any could be found. The only effectual remedy the defendant had was to suspend the operation of the order by an immediate appeal, which he has very properly taken.

What was the relation between these parties? The bill avers and the exhibits show the defendant was *tenant* of the complainants for the year 1871, under an agreement to render as rent a portion of the crops raised upon the land, and to quit the premises at the end of that year. The law clothed the landlords with ample power to terminate that tenancy at its expiration, and summarily eject the tenant if he held over. If they failed to take the necessary steps to that end, does this give them the right to ask a Court of Equity to remove him? If by reason of this failure the defendant has acquired the right to continue their tenant at sufferance or for another year, has equity jurisdiction to intervene and oust him because he is a bad manager or cultivator, or is vicious and disagreeable to his landlords, or is insolvent? Cases not unfrequently occur where a receiver of rents and profits of real estate may be appointed even on an *ex parte* application, where the main object of the bill is some relief properly cognizable in equity, and the purpose is to preserve and secure them for the benefit of those ultimately entitled. In such cases the averment of insolvency of the party in possession and receipt of the rents and profits, is most important in making out that strong and special case of imminent danger of loss always required as essential to a departure from the old rule, not to make such an appointment in any case, under any circumstances, before answer. Thus in *Clark vs. Ridgely*, 1 *Md. Ch. Dec.*, 70, the complainants claimed title to a trust real estate and the rents and profits thereof, and sought by their bill a sale for the purpose of partition and an account of the rents and profits from the party in possession. The bill also asked for a receiver, and we may assume the Chancellor would have made the appointment at once, and rightfully, if there had been an averment that the party in the

enjoyment of the rents and profits was insolvent and unable to account for the same. So in *Hannah K. Chase's Case*, 1 *Bland*, 206, where a widow was seeking dower in real estate (the Fountain Inn, in Baltimore,) and an account of rents and profits from the time her title accrued, the Chancellor, upon averment and proof that the party in whose hands and control the property was, and who was in the actual receipt of its rents and profits, was insolvent, appointed a receiver because that averment and proof showed the rents and profits to be exposed to imminent danger, or indeed to inevitable loss. Where a money fund is the subject of controversy, cases of settlement of partnership on dissolution, and others of like character, are familiar instances where the exercise of this power by Courts of Equity has been beneficially exerted. But none of these bear any analogy to the case before us. Title to the land as between these parties is not made a subject of litigation by this bill. It merely states a case in which the relation of landlord and tenant exists, and the object is to amove the tenant. For that purpose full and adequate remedy has been provided by law without the aid of equity. The law has also provided ample and summary means for the landlord to collect his rent. When this bill was filed the process of distraint was open to the complainants for the rent due and in arrear for the year 1871, whether that was a money rent or a portion of the crops. If any right of possession in the defendant now exists, it is in virtue of that relation and by reason of the complainants' neglect to take in time the proper steps to eject him. If a landowner has upon his lands, by agreement or default, a negligent and insolvent tenant bound to pay rent in money or in kind, that fact cannot give a Court of Equity power to amove him and work the land during the tenancy by means of a receiver. To sustain a pretension like this would open a novel and most extensive head of equity jurisdiction, and equity Courts might soon find themselves engaged in working and managing half the farms in the State. If he is a mere naked trespasser the law also furnishes ample means of redress.

The only ground of interference by a Court of Equity in a case like this is to prevent waste or acts of irreparable injury. If that had been the relief sought, and the injunction confined to this preventive remedy, we should have affirmed the action of the Court below in granting the injunction. For that purpose the averments of the bill are sufficient, and the case would fall within the numerous decisions of this Court, settling the law upon that subject. There is no prayer for such specific relief in the bill, but under the prayer for general relief the complainants may apply for a modified injunction covering this ground, which may be granted if the Court below, on considering the bill and answer (the latter of which this Court is not at liberty to notice on this appeal) or on further application, shall deem it proper. For that purpose the cause, on reversal of the order appealed from, will be remanded.

*Order reversed and*
*cause remanded.*

(Decided 21st May, 1872.)