(Decided 19th June, 1884.)

STEWART BROWN and ARTHUR GEORGE BROWN, Trustees *vs.* THE STATE OF MARYLAND, and THE ANNAPOLIS AND ELKRIDGE RAILROAD COMPANY.

*Deed of Trust or Mortgage by the Annapolis and Elkridge Railroad Company—Construction of the Act of 1872, ch. 425, empowering the Annapolis and Elkridge Railroad Company to Borrow money on Mortgage, as affecting the Lien of the State upon the property of said Company under its Charter—Priority of Lien of Bondholders under the Deed of Trust of the Railroad.*

The Annapolis and Elkridge Railroad Company was incorporated by the Act of 1836, ch. 298. Under the provisions of the eighth section of the Act, the State subscribed for stock to the amount of $300,000 ; but by the ninth section it was provided that before any subscription should be made by the State, the said railroad should enter into a covenant with the State to pay it semi-annually out of its profits, a sum equal in amount to the sum of six per cent. per annum on the subscription, which should be made on the part of the State; and that these payments should continue to be made until the clear annual profits of the company should be adequate to a dividend of six per cent. per annum to all the stockholders; and that thereafter the State, in reference to its stock subscribed,

should be entitled to receive a proportional dividend upon the profits, as declared from time to time, and no more. The railroad company executed the covenant as required, and the State paid the amount of its subscription; and became entitled to have three directors in the board, according to the fourth section of the Act of 1836. A change was made in the charter of the company by the Act of 1872, ch. 425, entitled "an Act to amend the charter of the Annapolis and Elkridge Railroad Company, by authorizing the said company to extend its road to the harbor of the city of Annapolis, to borrow money upon a mortgage of its property and franchises, and regulating the number and election of the directors of the said company." By the second section the company was authorized and empowered to borrow money, and to issue bonds or certificates of indebtedness under its corporate seal, and to secure the payment thereof with interest thereon, by a mortgage or deed of trust "upon all or any of its property, real and personal, together with the franchises of said company." Under the authority thus given the company executed a deed of trust of all its property and franchises to certain trustees, to secure the payment of certain bonds which it proposed to issue under the authority of said Act; which bonds were issued and were described as first mortgage bonds. On a bill filed by the State against said company, and the substituted trustees under said deed of trust, to restrain the sale of the railroad by said trustees, it was HELD:

1st. That by force of the second section of the Act of 1872, ch. 425, the State subordinated its rights (whatsoever their nature might be) to the rights which should be acquired under the deed of trust or mortgage authorized by that section.

2nd. That the power to borrow money and to secure its payment by a mortgage or deed of trust, was given by the said Act of 1872, in general and unqualified terms, without restriction to any particular purpose.

3rd. That there were three different purposes had in view in the passage of said Act, as declared in its title, and these were effected in three separate sections, which were in no wise made to depend upon each other; and the lien created by the deed of trust could not be restricted to the bonds used for the purpose mentioned in the first section of the Act.

APPEAL from the Circuit Court for Anne Arundel County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, IRVING, and BRYAN, J.

*Arthur George Brown,* and *Severn Teackle Wallis,* for the appellants.

*Charles B. Roberts, Attorney-General,* for the appellee, the State of Maryland.

*John Ireland,* and *Charles J. M. Gwinn,* for the appellee, the Annapolis and Elkridge Railroad Company.

BRYAN, J., delivered the opinion of the Court.

Stewart Brown and Arthur George Brown, Esquires, as trustees, advertised for sale by public auction, all the property, franchises and corporate rights of the Annapolis and Elkridge Railroad Company. It was stated in the advertisement that the sale was to be made in pursuance of the provisions of a certain deed of trust executed by the Railroad Company, dated June 20th, 1872, and duly recorded.

The State of Maryland filed a bill in equity, in the Circuit Court for Anne Arundel County, praying that the said trustees might be prohibited by writ of injunction from making the sale. In said bill in equity the reasons for the relief prayed were clearly and fully stated. The trustees, and also the railroad company filed answers to the bill; and by agreement of counsel, a *pro forma* decree was passed by the Court, upon the bill and answers. This decree restrained the sale of the railroad, and of all and any portion of its property until the further order of the Court, and contained other clauses which will hereafter be noticed. The trustees have appealed.

We will state the facts embraced in this controversy as they are shown by the proceedings in the cause. The

Annapolis and Elkridge Railroad Company was incorporated by the Act of 1836, chapter 298. Under the provisions of the eighth section of the Act, the State subscribed for stock to the amount of three hundred thousand dollars; but by the ninth section, it was provided that before any subscription should be made by the State, the said railroad should enter into a covenant with the State, to pay it semi-annually out of its profits a sum equal in amount to the sum of six per cent. per annum on the subscription, which should be made on the part of the State; and that these payments should continue to be made until the clear annual profits of the railroad company should be adequate to a dividend of six per cent. per annum to all the stockholders; and that thereafter the State, in reference to its stock subscribed, should be entitled to receive a proportional dividend upon the profits, as declared from time to time, and no more. The railroad company executed the covenant as required, and the State paid the amount of its subscription, and became entitled to have three directors in the Board, according to the fourth section of the Act of 1836. An important change was made in the charter of the railroad company by the Act of 1872, chapter 425. The title of the Act is: "An Act to amend the charter of the Annapolis and Elkridge Railroad Company, by authorizing the said company to extend its road to the harbor of the City of Annapolis, to borrow money upon a mortgage of its property and franchises, and regulating the number and election of the directors of the said company." By the second section the corporation is authorized and empowered to borrow money; and to issue bonds or certificates of indebtedness under its corporate seal, and to secure the payment thereof, with interest thereon, by a mortgage or deed of trust "upon all or any of its property, real and personal, together with the franchises of said company." On the twentieth day of June, in the same year, the corporation

duly executed a deed of trust to William G. Harrison and
Frederick W. Brune, Esq'rs, by which all its property of
every description was conveyed to secure the payment of
certain bonds, which it was proposed to issue under the
authority of the Act of Assembly. The description of
the property was of the most minute and comprehensive
character, and left no doubt that it was intended to em-
brace to the uttermost all the franchises of the corpora-
tion, and everything of the least value which it possessed.
And it was unequivocally stated that the bonds to be
issued were first mortgage bonds. The form of the bonds
was set out at large on the face of the deed of trust, and
according to this form it was to be stated on the face of
each bond, that it was not to become obligatory until the
trustees had signed a certain certificate which was to be
endorsed thereon. This certificate stated, among other
things, that there was no lien of record upon the property
of the corporation, prior to the lien created by the deed
of trust. The form and terms of the deed of trust and
bonds had been deliberately approved by the executive
and financial committee of the corporation, and this
action of the committee had been approved, and confirmed
by the Board of Directors at a regular meeting held at
their office, on the 18th day of June, 1872. The Board
of Directors also issued a paper, styled a "Prospectus of
the first mortgage bonds of the Annapolis and Elkridge
Railroad Company;" and in said paper, they distinctly
state that the road is absolutely free from debt; and that
the State of Maryland and private individuals had con-
tributed the whole cost, amounting to $500,000; and that,
as security for the money the corporation desired to bor-
row, it offered its present road, rolling stock, depots, lots,
and all other property, rights, and franchises, which were
worth at least $500,000.

Bonds to an amount exceeding $150,000, were issued
in accordance with the terms of the deed of trust, and

were negotiated through duly appointed agents of the corporation, and are now outstanding in the hands of *bona fide* purchasers for value. And other bonds were issued and used by it, and are now outstanding in the hands of different persons, who allege that they are *bona fide* holders thereof for value. Default having been made in the payment of the interest, the present appellants proceeded to advertise the property of the corporation for sale, in accordance with the provisions of the deed of trust, they having been appointed by due proceedings to take the place of the original trustees, now deceased. The bill of complaint on the part of the State, shows that the balance of the sums of money stipulated to be paid by this corporation, under the Act of 1836, ch. 298, amounted to $529,358.24 on the day the deed of trust was executed; and that it amounted to $736,858.24 on the first day of January, 1884; and it maintains that the State, by virtue of the above mentioned covenant, has a lien on all the franchises and property of the corporation for these sums of money prior to all other liens; and that it has been in no wise affected by the Act of 1872, and the deed of trust made thereunder. If this be so, the deed of trust gave no security whatever to the bondholders; for the amount due the State at the time it was executed, exceeded the value of all the property of every kind belonging to the corporation. It is our duty to ascertain the just and reasonable meaning of the Act of Assembly. Construing it literally, it authorizes a mortgage of all the property and franchises of the corporation, without a reservation of any lien or priority whatever. In the ordinary affairs of life, if an individual who has a lien on property authorizes a mortgage of it for the purpose of raising money, it would be inferred that he intended his lien to be subordinated to the mortgage. But suppose that his lien exceeded the value of the property, and that the money to be obtained by the mortgage was to be expended in improving it,

the inference would amount to certainty. He could not rationally believe that any one would lend money on property already incumbered beyond its value; while he might naturally be willing to mortgage his interest in the property, for the purpose of obtaining money which was to be expended in increasing the value and productiveness of his security. The corporation gave to the persons who purchased the bonds the most positive assurances, that there was no lien prior to that which they acquired by buying the bonds. And when the State gave its legislative assent to the mortgage for the purpose of securing these bonds, it must have known that the bondholders would think they were secured by an unencumbered title. It is impossible to believe that any one would imagine that large sums of money could be obtained on a security known to be utterly worthless. We are of opinion, that the proper construction of the Act of 1872, chapter 425, section 2, is that the State subordinated its rights (whatsoever their nature may be,) to the rights which should be acquired under the deed of trust, or mortgage authorized by that section. The *pro forma* decree of the Circuit Court not only granted the injunction, but also determined that the State had a lien on the property and franchises of the railroad company, prior to the lien created by the deed of trust, executed under the Act of 1872. It will be seen from what we have said, that this decree must be reversed; and, as we have settled all the merits of this controversy, the bill of complaint must be dismissed.

We have not thought it necessary to discuss the nature of the rights, which the State acquired under the ninth section of the Act of 1836. There is some difference of opinion among the members of the Court on this question; but we are unanimous in the opinion that, whatever such rights may be, they are effectually bound by the Act of 1872, and the deed of trust thereunder. It is maintained

in the bill of complaint, and has been earnestly argued, that the railroad company had not the power under the Act of 1872, chapter 425, to execute a deed of trust of its corporate property and franchises, for the purpose of improving its road-bed and track, and of repairing, replacing, and increasing its rolling stock, and equipment, or for any other than the particular purposes mentioned in the first section of the Act; and that the deed of trust in question, if not wholly invalid, is valid only to the extent of creating a lien to secure the bonds, which were used for these last mentioned purposes. But it will be seen by an examination of the Act, that the power to borrow money, and to secure the payment by a mortgage or deed of trust, is given in general and unqualified terms, without restriction to any particular purpose. The terms of the second section are free from all ambiguity and uncertainty. There were three purposes which the Legislature had in view in the passage of this Act, as declared in its title, to wit: to authorize the corporation to extend its road to the harbor of the City of Annapolis; to authorize it to borrow money upon a mortgage of its property and franchises; and lastly to regulate the number and election of the directors. And these three different purposes are effected in three separate sections of the Act, and are in no wise made to depend on each other. Any one of them might be carried out without reference to either of the others. It is manifest, therefore, that the lien created by the deed of trust cannot be restricted in the manner suggested in the bill of complaint.

*Decree reversed, and*
*bill dismissed.*

(Decided 19th June, 1884.)