## ALBERT N. HORNER *vs.* ELIZABETH H. BELL ET AL.

*Appointment of Receiver Before Testimony on Bill to Vacate Deeds— Res Adjudicata.*

A bill in equity alleged that after the death of an aged woman, the defendant H., her son-in-law, placed upon record four deeds purporting to have been executed by her conveying property of little value to the plaintiffs, the woman's grandchildren, and the bulk of her estate to said defendant and his wife. The bill alleged that the grantor was incapable of making a valid deed and that the defendant had taken advantage of that incapacity to procure said conveyances and also the transfer of

certain city stock. The answers specifically denied the averments of the bill and alleged that defendant was possessed of ample means to respond to any claim the plaintiffs might establish. *Held*, that at this stage of the case, before the taking of any evidence as to the validity of the deeds, where there is no allegation in the bill of insolvency and danger of loss, when the defendant H. could not alien the property *pendente lite* and his answer swore away the allegation of the bill as to the city stock, a receiver should not be appointed against the legal title.

In a former suit certain deeds executed in 1899 were vacated and annulled because it was held that the grantor was not then capable of making a valid deed, and that a confidential relation existed between the grantor and the principal grantee. In this case the bill alleged that four deeds executed by the same grantor in 1901, conveying the same property to the same grantees, were invalid for the same reasons, and asked for the appointment of a receiver to take charge of the property, before the production of any evidence. *Held*, that the matter of this suit is not made *res adjudicata* by the decision in the former case; that the transactions are distinct and the validity of the two sets of deeds must be determined by their respective circumstances and the fact that the grantor was incompetent in 1899 does not prove that she was also incompetent in 1901.

*Decided February 28th, 1907.*

Appeal from Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and ROGERS, JJ.

*John P. Poe* and *Julius H. Wyman*, for the appellant.

*Joseph B. Seth* (with whom was *H. E. Mann*, on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a decree of Circuit Court No. 2 of Baltimore City appointing a receiver to take charge of the real, leasehold and chattel property of Elizabeth B. Hammersly, deceased, (not including the Baltimore City stock mentioned in the bill of complaint) and granting an injunction to restrain the appellant, Albert N. Horner, from transferring or disposing of the said Baltimore City stock.

This is a continuation of the litigation between the parties to this case which was the subject of the appeal in *Horner* v. *Bell*, 102 Md. 435, to which frequent reference will be required in this opinion.

The bill in this case recites the averments of the bill in the former case, both as to the property of the said Elizabeth B. Hammersly, the persons who are her heirs at law, and the disposition of her property made, or attempted to be made, by four conveyances executed by her on July 29th, 1899, which conveyances were by a decree of Circuit Court No. 2 annulled and set aside as fraudulent and void, and which decree was affirmed in 102 Md. 435 *supra*. The bill further avers that Albert N. Horner on February 24th, 1906, caused to be placed upon record four other conveyances, all dated December 9th, 1901, purporting to be executed by the said Elizabeth B. Hammersly, and conveying respectively to the parties named in the former conveyances, the identical properties described in said respective former conveyances, that is to say (1) to Elizabeth H. Bell, her granddaughter for her life, and after her death to her children, certain leasehold property of little value ; (2) to George D. Hammersly, her grandson, certain other leasehold property also of little value, both in bad condition; (3) to Mary D. Horner, wife of Albert N. Horner, and her only daughter, certain goods and chattels contained in No. 108 North Green street and No. 2045 North Fulton avenue ; and (4) to her son-in-law, said Albert N. Horner, all the residue of her estate of every kind, the consideration named in each of said deeds, being "five dollars and other good and valuable considerations." The bill does not allege what is the value of the property mentioned in said conveyances, but the answers filed in the cause, admit that the said Elizabeth B. Hammersly, before the execution of said conveyances, was possessed of the real and leasehold property described in the bill, and avers that its maximum value was $25,000, and also admits that before July 17th, 1899, she was possessed of Baltimore City stock worth $28,000, making her total estate about $53,000.

The bill further alleges that Horner procured said four con-
veyances to be recorded "out of time," that is within four
hours after delivery to the recording clerk, and then to be
immediately delivered to him, and so prevented the plaintiffs
from seeing the original conveyances, and that they are "ex-
act copies in their terms and substance," of the four convey-
ances of July 29th, 1899, and of four other conveyances dated
February 14th, 1900, and filed with the examiner in the
former case referred to; that the plaintiffs knew nothing of the
execution of the four conveyances of December 9th, 1901,
until after their recording on February 24th, 1906, and that
the two conveyances purporting to be made them, were never
delivered to or accepted by them, and were never intended by
the said Elizabeth B. Hammersly to take effect in her lifetime,
and are therefore null and void; and that they had no knowl-
edge of the execution or delivery of the conveyances referred
to in this bill, and which were the subjects of adjudication in
the former case, until shortly before the bill in that case was
filed.

The bill still further alleges that since the decision of the
appeal in the former case, the plaintiffs have learned that said
Horner has filed with the Register of Baltimore City certfi-
cates of Baltimore City stock of the par value of $28,000
owned by said Elizabeth B. Hammersly, which pretended to
be transferred by her to said Horner, but which transfer the
plaintiffs charge was never legally made by her and is null
and void.

It further charges that at the time of the execution of said
conveyances and transfer of stock, said Elizabeth B. Ham-
mersly was seventy-seven years of age, infirm in body and
feeble in mind to such an extent as to render her incapable of
making a valid deed or contract; that she resided with said
Horner who took advantage of her incapacity to procure said
conveyance and transfer, whereby the plaintiffs would receive
only a pittance of the large estate of their grandmother instead
of receiving one-third thereof in the natural course of events;
that long after the execution of said conveyances of Decem-

ber 9th, 1901, said Elizabeth B. Hammersly retained control of, and exercised all rights of ownership over, all said property, and that said conveyances and said transfer of stock were without any consideration, were never legally executed, delivered, or recorded, and should be set aside as fraudulent and void; that the two plaintiffs, together with the said Wm. H. Hammersly and Mary D. Horner are the only heirs at law of said Elizabeth B. Hammersly, and as such are entitled to her whole estate; that said Wm. H. Hammersly without notice to plaintiffs applied for, and was granted letters of administration upon the estate of said Elizabeth B. Hammersly, and gave bond as such administrator in the penalty of $100, and that this was done at the instance of said Horner; that Wm. H. Hammersly is a man of bad habits, an excessive drinker, incapable of properly transacting any business, and wholly dependent for support upon said Horner and his wife, and that he was used by said Horner in this way to enable him fraudulently to possess himself of the estate of said Elizabeth B. Hammersly; that the plaintiffs had applied to the Orphans' Court for Baltimore City for a revocation of said letters of administration on the ground of the general unfitness of said Wm. H. Hammersly for the duties of the office, and upon the special ground that his answer to the bill in the former case showed him to be a party to a conspiracy to defraud the plaintiffs of their rights in the estate of Mrs. Hammersly, but that the Orphans' Court refused to revoke said letters, though it required his bond to be increased to the penalty of $3,000, which conduct on the part of the Orphans' Court, the plaintiffs allege to be a travesty upon justice, and to require the intervention of this Court, in the exercise of its general jurisdiction, to assume control over the administration of said estate through a receiver to be appointed by it, and the prayers of the bill were in conformity with the character of its averments.

Separate answers were filed by each of the three defendants.

That of Albert N. Horner is full and specific. He alleges that the conveyances of December 9th, 1901, were her free and voluntary act, and were executed and delivered by her

when she was absolutely and indisputably in possession of all
her mental faculties, and that these conveyances were made to
carry out a purpose long and deliberately held by her; that
he had in his possession said original deeds and would pro-
duce them at the hearing and that the recording of deeds out
of place was neither unlawful nor unusual, and that the four
deeds in question were executed before Edwin Eareckson, a
Notary Public, whereas the other eight deeds referred to in
the bill were executed before Andrew J. Collars, a Justice of
the Peace now dead, and that the property conveyed to the
plaintiff Elizabeth H. Bell was worth $2,000, and that con-
veyed to George D. Hammersly was worth about $1,500.

He alleged that he purchased said Baltimore City Stock of
the par value of $28,000 from Mrs. Hammersly; that the
purchase was made in good faith, and that he well and truly
paid the whole of said purchase price in cash, at the full par
value of said stock, at different times, and in different amounts
between May 21st, 1898, when she executed a power of attor-
ney authorizing him to transfer said stock to himself, and the
17th of July, 1899, when said transfer was made, and that
Mrs. Hammersly never exercised, or claimed the right to ex-
ercise, any control or ownership over said stock, or over any
of said property after the execution of said conveyances and
power of attorney.

He further alleged that Mrs. Hammersly acquired all of her
property through a conveyance from her husband, David L.
Hammersly, dated January 4th, 1898, who died at a later date
in the same month of that year, and that in making the con-
veyances mentioned in the bill she was following of her own
free will and fixed purpose, the precedent and example set
for her by her husband, and that she sold the Baltimore City
stock because she wished to dispose of it and use the pro-
ceeds otherwise as she had a right to do, as she felt that what
she and her husband had done for the plaintiffs in his and her
life time was sufficient for them; that when Wm. H. Ham-
mersly was about eighteen years of age he married a dissolute
woman, and one reason why Mrs. Hammersly made the con-

veyance to Horner was her purpose to debar her son's wife from any interest in her own property, and that her son would be taken care of by Horner and his wife.

He also alleges that Wm. H. Hammersly for more than four years before the grant of letters of administration to him had ceased to use any intoxicating liquors, and was competent to discharge properly the duties of the administration.

He then specifically alleges at much length that after her husbands death it was Mrs. Hammersly's fixed purpose not to make a will, but to convey her property in her life time to those whom she wished to enjoy it; that she was much disturbed by the litigation over the will of George R. Berry, and frequently declared her purpose to prevent controversy over her estate by disposing of it by deed and not by will, as her husband had done, and that with this view she from time to time, reaffirmed her purpose by renewing such deeds at stated intervals. Thus her first deeds were executed July 29th, 1899. Four other deeds of like tenor and effect were executed February 14th, 1900. The third set of deeds of like tenor and effect were executed August 1st, 1900. The fourth set of deeds of like tenor and effect were executed April 23rd, 1901 and on the 9th day of December, 1901 the fifth set of deeds of like tenor and effect were executed, and she died on June 4th, 1902. Thus it will be seen that she executed a new set of deeds practically every six months. He alleges in his answer that he was not present at the execution of the last set of deeds, but that Mrs. Horner alone, in addition to the Notary, was present at that time.

This persistent execution of successive conveyances of the same tenor and effect, indicates either remarkable tenacity of purpose and intelligent exercise of will on the part of Mrs. Hammersly, or equally remarkable shrewdness and skill on the part of Mr. and Mrs. Horner in devising and executing a plan to defeat the not unnatural expectations of the plaintiffs, and to possess themselves of the bulk of Mrs. Hammersly's estate.

Horner further alleges that he was advised by counsel in

the former case that the case made by plaintiffs was not suffi-cient to require of him and his wife any testimony to meet the plaintiffs' case, other than their answers to the interrogatories accompanying the bill. The answers in that case were char-acterized by JUDGE JONES as "evasive and perfunctory" and as "framed, if not with the purpose, at least with the effect, to make the burden of the plaintiffs with respect to proof, as difficult as possible," and with this language of the careful and conscientious Judge whose lamented death has since occurred, we do not disagree; but in this case, heard on bill and answers, we cannot say that the defendants have not met the averments of the bill with clear and specific denials. There is no averment in this bill of the insolvency of Albert N. Horner, or that he is not of ample means to respond to any claim which the appellees may establish. The case, as now presented, upon bill and answers, does not involve a decision upon the final merits, and requires us to examine with care the right of the plaintiffs, at this stage of the case, to a decree for receivers and an injunction.

The fundamental principles governing the appointment of receivers are thoroughly settled in this State, and are stated with great precision in *Millers Equity Procedure*, sec. 629 to 634, accompanied by reference to the cases. From these numerous cases, none can be selected which more succinctly and strongly state the controlling principle in this case, than the case of *Kipp* v. *Hanna*, 2 Bland 31, in which the Chan-cellor said: "A receiver may be appointed against the legal title in a strong case of fraud, *combined with danger to the property*. But the Court interposes by appointing a receiver against the legal title with reluctance. It must not only be *morally sure*, that, at the hearing, the party would, upon those circumstances be turned out of possession; but must see some imminent danger to the property and the intermediate rents and profits, from not acting rather prematurely and if the property should not be taken under the care of the Court." In numerous subsequent cases this doctrine has been approved, and it has been repeatedly said in cases of varying character,

that the power of appointing a receiver is a most delicate one, and should be exercised by the Court with extreme caution, and only under special and peculiar circumstances requiring summary relief. The justification for the exercise of this power, is the preservation of the subject of litigation, or of the intermediate rents and profits.

In *Blain* v. *Everett*, 36 Md. 81, the Court said: "In such cases the averment of insolvency of the party in possession and receipt of the rents and profits, is most important in making out that strong and special case of imminent danger of loss always required as essential to a departure from the old rule not to make such an appointment in any case, under any circumstances, before answer." It is obvious therefore that, *after answer*, where the answer under oath fairly meets the averments of the bill, and the case is heard on bill and answer, the same rule must be applied. Accordingly in *Furlong & Miller* v. *Edwards*, 3 Md. 112, where the case was in that condition, the Court said: "The only allegations in the bill that could have authorized the interference of a Court of Chancery in the mode prayed for, were those which averred *that the defendant was in possession of the property, was selling and converting the same to his own use, that he was insolvent, and that the complainant was thereby in danger of losing his debt.* These charges are unequivocally and explicitly denied, and thus the complainant has every pretended ground taken from him, upon which to rest an application for an injunction and receiver."

Here the allegation is not even made. The answer however asserts that Horner is of abundant means to meet any liability which might be established at a hearing upon the merits. Moreover, two of the heirs at law of Mrs. Hammersly, Mary D. Horner and William H. Hammersly, representing as such two thirds of her estate, adopt the answer of Albert N. Horner, and sustain the validity of all the conveyances attacked, so that the case only involves a claim to one-third of the real and leasehold property conveyed to Albert N. Horner, and one-third of the Baltimore City Stock assigned to him. He could not, *pendente lite*, sell or encumber the real or leasehold es-

tate, and therefore only one-third of the rents and profits are involved in this controversy.   As to the City stock, the answer avers that Horner paid for it its full par value in cash, and in the absence of any evidence whatever to contradict this averment, the answer being under oath, swears away all the equities of the bill, there being no allegation of present insolvency in the bill, or of Horner's inability to pay the purchase-money for the stock at the time of the alleged purchase.

But it is contended for the appellees that the relief sought in the former case is the same sought in this case, and that the matter here in controversy is therefore *res adjudicata*, but we are not able to adopt this view.

Much reliance for this contention seems to be placed upon the case of *State* v. *Brown*, 64 Md. 203.  In that case it was sought to have declared null and void *the same deed of trust*, which in 62 Md. 439, in a case where the bill was filed between the same complainants, and the same defendants, was declared to be good and valid.   The Court said, "The purpose in each case was to strike down and defeat the power of sale contained in the (same) deed of trust."   But the deeds assailed in this case are not the same assailed in the former case.   Those assailed in the former case were vacated and annulled, because the Court held it appeared from the *testimony* that there was a confidential relation existing between Mrs. Hammersly and her son in law; that the burden of proof to show that the deeds were the voluntary and deliberate act of the grantor had not been met by the defendants, that the physical condition of the grantor at the time of the execution of said deeds was such as to unfit her for the transaction of business without independent advice, and *that for these reasons* the deeds should be vacated and annulled.   It does not follow that the testimony *which is yet to be taken in this case*, will show as it did in the former case that a confidential relation continued to exist between these parties, nor that the physical condition of Mrs. Hammersly was the same at the date of the execution of the deeds assailed in this case, as it was when those assailed in the former case were executed.   The two

transactions are distinct and independent, and their validity must be determined by the circumstances attending them respectively, and it may be observed here that the deeds assailed in the former case were there discussed in argument and considered by the Court as *deeds*, and not as *testamentary papers*, as the appellees in their brief in this case seek to treat them. This cannot be done consistently with the character of the proceeding in this case, the prayer for relief being that the deeds may be "set aside and annulled." If they could be regarded as testamentary papers there would be no jurisdiction in a Court of equity to annul or set them aside, and the counsel for the appellees would not have invoked the relief which they seek.

This case, in respect to the number of similar sets of conveyances, alleged in the answer to have been intended to accomplish the same results, is unlike any case to which we have been referred, but if the truth of that allegation in the answer, and the *bona fides* of the transactions be assumed for the purpose of considering only the character of these papers, all those which followed the execution of the first set, might be fairly regarded as confirmatory of title which had been adequately and fully conveyed by the first set.

Whether the unusual and peculiar course pursued indicates a persistent and cunningly devised scheme of Horner and wife to dominate the feeble will of an infirm old woman, and by undue influence to acquire possession of the bulk of her property, or whether it disclosed a fixed purpose on the part of a woman of strong will and business capacity, to dispose of her property in her lifetime according to a design of her own, can only be properly determined from testimony taken for a hearing upon the merits of the case. The doctrine of *res adjudicata* can in no event be applied to the Baltimore City stock since that was nowhere mentioned in the former case, and was no part of the *rem* upon which the decree operated.

Nor do we think it can be applied at all in this case. The principles which govern the application of this doctrine are stated with admirable clearness and precision in *Cromwell* v.

*County of Sac,* 94 U. S. 361. That was an action on four bonds of Sac County, and four coupons attached, for interest. To defeat this action, the defendant relied upon the estoppel of a judgment in favor of the County in a former action brought by one Smith upon certain earlier maturing coupons on the same bonds, accompanied with proof that Cromwell was at the time the real owner of the coupons in that action, and that the action was prosecuted for his sole use and benefit. Mr. JUSTICE FIELD there said : " It should be borne in mind that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties, upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue, or points controverted, upon the determination of which the finding or verdict was rendered. * * * Only upon such matters is the judgment conclusive in another action."

In the former case mentioned in *Cromwell* v. *Sac County,* it appeared that the bonds in question which were negotiable instruments were issued and delivered to a person who had contracted to erect a County Court House, but never did erect it. It also appeared that the plaintiff in the former suit became the holder before maturity of 25 coupons which had been attached to some of these bonds, but there was no finding that he had ever given any value for them, and upon those findings the Court held the bonds were void as against the county and gave judgment accordingly. In *Cromwell* v. *Sac County,* the plaintiff offered to prove that he gave value before maturity for the bonds and coupons then in suit, but was not allowed to do so, because of the supposed effect of the former judgment mentioned. The Court said " There was nothing adjudged in the former action in the finding that

the plaintiff had not made such proof in that case which can preclude the present plaintiff from making such proof here. The fact that a party may not have shown that he gave value for one bond or coupon, is not even presumptive, much less conclusive, evidence that he may not have given value for another and different bond or coupon. The exclusion of the evidence offered by the plaintiff was erroneous, and the judgment must be reversed." The analogy between that case and the case before us is obvious.

In the case of *Horner* v. *Bell*, 102 Md. the Court held that the burden of proof was upon Horner to sustain the conveyances *then before the Court*, and as he failed to offer any such evidence, the Court struck down those *particular* conveyances, but the fact that he did not offer such evidence, is not conclusive, nor is it even presumptive, evidence, that he cannot or will not offer such evidence in this action which involves different and later conveyances, of the same property. It was adjudged in the former case that he took no title under *those* conveyances, but there was no adjudication that he could take no title to the same. property under different and later conveyances. An illustration of the manner in which this doctrine is treated when sought to be applied to the title to land may be found in *Applegate* v. *Dowell*, 15th Oregon 513, in which it was held, that in a suit by a plaintiff to remove a cloud upon his title, a decree in a former suit, against the plaintiff and his grantor and others, rendered subsequent to the plaintiffs purchase of the land and declaring his *grantors* deed to be fraudulent, did not estop the plaintiff from claiming title to the land. That case was decided upon the authority of. *Cromwell* v. *County of Sac*. The Court said, " The bill only sought to annul the deed from Jesse Applegate to Wm. H. H. Applegate, though the latter had long before conveyed to the plaintiff for a valuable consideration, Dowell contented himself with impeaching the deed from Jesse to Wm. H. H. but left the deed from the latter to the plaintiff in *statu quo*. If the validity of the deed from Wm. H. H. to the plaintiff had been made an issue in the suit, the decree would have been con-

clusive upon the question, but it would have had to be put directly in issue, and not merely collaterally litigated. The decree does not conclude the appellant from asserting title to the land."

In *Packham* v. *Glendmeyer*, 103 Md. 416, where a somewhat similar state of facts was alleged as to successive wills, this Court said, "A charge of fraud in a particular transaction cannot be proved by evidence of other and independent frauds of the party charged, though in a similar transaction, unless it appears that there is such a connection between the transaction, as to authorise the inference that the frauds are both parts of a general scheme or purpose to defraud," but the existence of this scheme is a question of proof, in no way involving any question of estoppel.

For these reasons the decree of the Circuit Court No. 2 will be reversed, the injunction will be dissolved and the case remanded.

> *Decree reversed with costs to the appellant above and below. Injunction dissolved and case remanded.*