# JOHN J. SHANFELTER vs. JAMES R. HORNER, TRUSTEE.

*Forfeiture of Lease for Non-Payment of Rent—Ejectment—Demand of Rent—Evidence—Right of Trustee to Maintain Ejectment.*

A lease provided that if the rent reserved should at any time during the tenancy be for more than ninety days due and in arrear, "then the said tenancy shall be at once, and without notice of any kind, determined, and the party of the first part become and be entitled to immediate possession of the premises aforesaid, provided he shall so elect, but not otherwise." *Held,* that upon such default in the payment of the rent, the landlord was entitled to maintain an action of ejectment for the premises without having previously made a demand of payment.

In such action the tenant cannot be asked why he did not pay the rent when due.

The estate of the landlord in said premises and lease was conveyed to the plaintiff in trust for the city of Baltimore. *Held,* that the plaintiff was authorized to maintain the action.

Appeal from the Court of Common Pleas of Baltimore City (DENNIS, J.) The case is stated in the opinion of the Court.

The cause was argued before BRYAN, McSHERRY, FOWLER, ROBERTS, PAGE and BOYD, JJ.

*Richard S. Culbreth,* for the appellant.

As there was no demand for the rent, there was no breach of the covenant to pay it. By demand in such cases is meant a demand made with all the technical niceties of the common law. *Henderson* v. *Coal and Coke Co.,* 140 U. S. 25; *Mackubin* v. *Whitcraft,* 4 H. & McH. 154; *Jackson* v. *Harrison,* 17 Johns, 66; *McQuesten* v. *Morgan,* 34 N. H. 400; *Jones* v. *Reed,* 15 N. H. 68; *Smith* v. *Whitbeck et al.,* 13 Ohio St. 472; *Tate* v. *Crowson,* 6 Ire. 67; *Bowman* v.

*Foot*, 29 Conn. 331; *Chapman et al.* v. *Kirby*, 49 Ill. 211 ;
*Bacon* v. *Furniture Co.*, 53 Ind. 230; *Chapman* v. *Harvey*,
100 Mass. 353; *Acock* v. *Phillips*, 5 H. & N. 183; *Smith's
Leading Cases*, 1 vol. 1 pt. 132-134; *Gear on Landlord and
Tenant*, sec. 195; *Taylor's Landlord and Tenant*, sec. 493.

As the right to re-enter is still necessary before advantage
can be taken by ejectment of the forfeiture of a lease, it
will be found in most of the cases cited that the leases pro-
vide not only for the forfeiture by the use of such language
as that "they shall be null and void," or "shall cease and
determine," but also for the right of re-entry in express
terms.   But in some of the cases the clause of re-entry is
omitted.   And it was argued in the Court below, on behalf
of the appellee, that if a lease for years declares expressly
that it shall terminate upon breach of a condition subse-
quent, and contains no clause of re-entry, it will then end
*ipso facto;* but if it contains a clause of re-entry, it is only
voidable by re-entry.   The rule is so stated in *Gear on
Landlord and Tenant*, section 71.   The following cases are
cited to support the text: *Parmelee* v. *R. R. Co.*, 6 N. Y.
74; *Kenner* v. *American Contract Co.*, 9 Bush. 207; *Kenrick*
v. *Smick*, 7 Watts & S. 41; *Sheaffer* v. *Sheaffer*, 37 Pa.
St. 525.

The first two cases are not in point, for the conditions
were not for the payment of rent; and it is only in the case
of such conditions that the necessity for a demand on the
land exists.   *Smith's Leading Cases*, 8th ed. 1 vol. 1 pt.
133; *Sheppard's Touchstone*, 136; *Co. Litt.*, 210 a.; *Mc-
Questen* v. *Morgan*, *supra*.   And the two Pennsylvania
cases were reversed in *Gas Co.* v. *De Witt*, 130 Pa. St. 212.

In the case of *Jewett* v. *Berry*, 20 N. H. 36, it does not
appear that there was any clause of re-entry, the condition
being that "if the yearly rent should not be paid within
sixty days after the same should have fallen due, the lease
shall be void."   The Court said: " The mere omission to
pay the rent does not work a forfeiture of the term, unless
the rent be demanded on the day it is due, and on the prem-

ises out of which it issues." So, in the case of *Chapman* v. *Wright*, 20 Ill. 120, there was a clause of forfeiture, but no clause of re-entry. The Court said: "The doctrine seems to be well settled, that, in cases of forfeiture of a lease for non-payment of rent, there must be a demand."

In the law of landlord and tenant, the words demand and notice are rarely, if ever, used in the same sense. The phrase, without notice of any kind, means simply that after a forfeiture of the estate has occurred in consequence of a breach of the condition, the lessor is entitled to the immediate possession of the premises without first notifying the lessee of his intention to claim it. As the estate was to cease and determine, provided the lessor should so elect, but not otherwise, what was the character of the tenancy. after breach of the condition, but before the election of the lessor was declared! Was the lessee a tenant at sufferance? If so, he was entitled to 30 days' notice to quit under the Code. Now it was for the purpose of avoiding the necessity of giving such notice or any notice, that the words "without notice of any kind" were employed. They were not intended to relate to anything that might transpire before the breach, but only after it. Their object was to define or emphasize the right of the lessor to immediate possession of the premises, without the necessity of giving the lessee even a day's notice to vacate them. By "without notice" was meant " without notice to quit," which is the ordinary sense in which the word is used.

*William S. Bryan, Jr., City Solicitor,* (with whom was *Thomas G. Hayes, City Counsellor,* on the brief), for the appellee.

*First Bill of Exception.*—The prayer offered by the appellant at the close of the appellee's case, was as follows: "The defendant prays the Court to instruct the jury that under the proceedings and evidence in this case, there is no legally sufficient evidence to entitle the plaintiff to recover." It will be more convenient to consider the questions sought

to be raised by this prayer when discussing the granted prayers, and it is sufficient to say now that the prayer was properly rejected because it was subject to the vice of being too general.  2 *Poe on Pract.* sec. 297; *Hatton* v. *McClish,* 6 Md. 407 ; *Dorsey* v. *Harris,* 22 Md. 85 ; *Reier* v. *Straus,* 54 Md. 291.

*Second Bill of Exception.*—This exception is to refusal of the Court to allow the appellant to give his reasons why he did not pay the rent which he had permitted to become over five months in arrears.   How the private reason which he might have pretended to have had for not fulfilling his contract and paying his rent, could affect the enquiry before the Court, or could in any way be relevant, was not stated by the learned counsel in the Court below.   The ruling was too clearly right, it is submitted, to permit of serious discussion.   The forfeiture *vel non* of the lease depended upon his act, not upon his motives.

*Third Bill of Exception.*—The defendant's prayer was as follows:  " The defendant prays the Court to instruct the jury that the plaintiff is not entitled to recover unless they find that the plaintiff demanded payment of the precise sum due on the most notorious part of the demised premises at a convenient time before sunset on the day it was due, and that of these facts there is no evidence."   In other words, that to forfeit the lease the defendant had to observe all the obsolete and technical common-law requirements in regard to a re-entry.

The rule of law, it is submitted, on the subject of forfeitures by conditions subsequent, is well settled.   It is stated as follows, in *Gear on Landlord and Tenant,* section 71 : " Conditions subsequent are those by the forfeiture or non-performance of which an estate already vested may be defeated.  *  *  *  If a lease for an estate for years declares expressly that it shall terminate upon a breach of a condition subsequent, and contains no clause of re-entry, it will then end *ipso facto;* but, if it contains a clause of re-entry, it is only voidable by re-entry."   The law is clearly laid

down to the same effect in *Parmlee* v. *R. R.*, 6 New York, 74; *Kenreck* v. *Smich*, 7 Watts & Sargeant, 41. The reason for the distinction between the cases where there is, and the cases where there is not, in addition to the condition that on the non-payment of rent the lease shall be void, the additional proviso that the landlord shall have the right to re-enter, is plain. The whole question is one of the construction of the instrument, and the intention of the parties. And applying the familiar canon of construction that, if possible, some meaning must be given to every clause in the lease, the argument seems irresistible that if any force at all is to be given to the clause securing the right to the landlord to re-enter, it must be to make the whole paper mean that the lease shall be void if the landlord elect to re-enter. *Armsby* v. *Woodward*, 6 B. & C. 519; *Kerner* v. *Am. Contract Co.*, 9 Bush. 207.

The condition in the lease in the case at bar is that if for more than ninety days the rent shall be " due and in arrear, then the said tenancy shall be *at once* and *and without notice of any kind determined*, and the party of the first part become and *be entitled to immediate possession* of the premises aforesaid, provided he shall so elect, but not otherwise." Nothing is said about re-entry.

It is submitted that this question is settled in this State by the decision of *Cooke* v. *Brice*, 20 Md. 397.

ROBERTS, J., delivered the opinion of the Court.

This is an action of ejectment brought by the Comptroller of Baltimore, as trustee for the city, against the defendant, the tenant in possession of the Imperial Hotel property in said city. Issues were joined on the plea of not guilty, and the verdict and judgment being for the plaintiff, the defendant has appealed. The facts are, that the defendant and one Charles C. Duffy, as partners, leased from Charles J. Bonaparte the premises in question, on the 28th of March, 1892, for a term of five years, beginning May 1st, 1892, at a rental of $800 per month (which was subsequently in-

creased), payable on the first day of each calendar month during said term. Shortly thereafter Duffy died, and on June 5th, 1893, his personal representatives and the defendant made another agreement with Bonaparte, by which the interest of Duffy's estate in said lease was transferred to the defendant. By the terms of this agreement the defendant was accepted by Bonaparte as "sole tenant and debtor," and the estate of Duffy was released from all liability on account of said lease. There can be no question on the evidence, which the record presents, that the defendant not only recognized and treated Bonaparte as his landlord, but after said Bonaparte, by his deed of date September 1st, 1893, conveyed said property to the appellee, the appellant treated the appellee as his landlord and fully recognized him as such. Looking to the terms of the original agreement of lease between Bonaparte and Duffy and the defendant, we find this provision, that, "if the rent hereby stipulated to be paid shall, at any time during the continuance of any tenancy created, or to arise in pursuance of this agreement of lease, be for more than ninety days due and in arrear, then the said tenancy shall be at once, and without notice of any kind, determined, and the party of the first part become and be entitled to immediate possession of the premises aforesaid, provided he shall so elect, but not otherwise." It is not pretended that the plaintiff did not elect.

Referring to the deed from Bonaparte to the defendant, we find that said property is conveyed, "with the right of the said James R. Horner, trustee, to enforce all the covenants and provisions of said lease, as fully and in the same manner as said Bonaparte could enforce the same, in the event of any future default upon the part of the said Shanfelter or any one claiming under him;" and further, that said property is conveyed "in trust, that said Horner shall hold said property hereby intended to be conveyed, and collect all the rents, income and revenues to be derived therefrom, when the same shall mature and accrue, for the sole and separate use of the Mayor and City Council of Baltimore, &c."

The record contains three exceptions. The first and third relate to the prayers, and the second to the evidence. At the close of the plaintiff's case, the defendant offered a prayer, by which he sought to take the case from the consideration of the jury. This prayer will be considered in connection with the prayers offered at the conclusion of the case. The second exception is taken to the refusal of the Court to allow the appellant to state why he did not pay any rent for the leased property after the first of December, 1893. We have not been referred to any authority which tends to sustain the relevancy or materialty of this question. It does not belong to that class of questions, to determine the relevancy of which it is necessary that it should have been answered. But under the issues in this case, the question of itself and by itself was properly disallowed. As said by the appellant's attorney in his brief, "The forfeiture *vel non* of the lease depended upon his *act*, not upon his *motives*." It is admitted that no rent was paid after the date named, and if we correctly understand the statement of the counsel for the appellant, in this Court, it is not contended that the appellant had any valid excuse for not paying the rent due by him. But in any event, we think no just reason has been assigned why the rent was not paid.

We find no error in the proposition of law submitted by the appellant for the instruction of the jury, and granted by the Court, which, together with the prayer of the appellees refused by the Court, constitute the third bill of exceptions. This prayer of the appellant presents the chief contention in this appeal. It is as follows: "The defendant prays the Court to instruct the jury that the plaintiff is not entitled to recover, unless they find that the plaintiff demanded payment of the precise sum due on the most notorious part of the demised premises at a convenient time before sunset on the day it was due, and that of these facts there is no evidence." If this prayer correctly states the rule of law which ought to obtain in this State in the forfeiture of a lease for the non-payment of rent, it is quite clear that it has not been followed

in this case. But we think the appellant has misconceived the true meaning and legal effect of the condition contained in his agreement of lease with Bonaparte. It will be seen, by reference to its terms, that a re-entry was not requisite to have entitled the lessor to determine the tenancy, for it is expressly provided thereon, that if the rent shall be for more than ninety days due and in arrear, the tenancy shall be at *once, and without notice of any kind*, determined. We do not agree with the appellant that this condition must be held subject to the common law requirements set out in the prayer now under consideration. To do so, would be to ignore the whole tendency of modern legislation as illustrated in the enactments of the various States of the Union, and especially in our own State, in the Act of 1872, ch. 436. LORD TENTERDEN, speaking as to the construction proper to be placed upon conditions of this character in *Doe & Davis* v. *Elsam*, 1 M. & M. 189, said: "I do not think provisoes of this sort are to be construed with the strictness of conditions at common law. These are matters of contract between the parties, and should, in my opinion, be construed as other contracts. The parties agree to a tenancy on certain terms, and there is no hardship in binding them to those terms. In my view of cases of this sort, the provisoes ought to be construed according to fair and obvious construction, without favor to either side." There never was any just reason for giving to the condition contained in an agreement for a lease an interpretation totally at variance with the canons of construction usually applied in the ascertainment of the true meaning of contracts made in the ordinary affairs of life, and we are unwilling to sanction it now. Sedgwick & Wait in their work on the *Trials of Title to Land*, § 367, say: That in all cases where an estate for years is granted on condition, and the lease declares that the estate shall cease and determine on the breach of the condition, without any clause of re-entry or other qualifications, the estate will *ipso facto* cease as soon as the condition is broken. *Parmelee* v. *O. & S. R. R. Co.*, 6 N. Y.

74; see *Morten v. Weir*, 70 N. Y. 247. Mr. Washburn, in his work on *Real Property*, vol. 1, p. 505, speaking of the effect of a condition subsequent, says: "Again, it is held that a condition can only be taken advantage of, if broken, by the lessor, or his assigns * * * and if the estate of the tenant be one for life, the reversioner can only defeat it by entry. But, if it be for years, no entry is necessary, unless it is stipulated in the lease that the lessor shall re-enter, and in this case he may, after breach, bring ejectment without first making a formal entry." *Roberts v. Davey*, 4 B. & Ad. 664; *Hughes v. Palmer*, 19 C. B. 405; *Shattuck v. Lovejoy*, 8 Gray, 204; *Gamhart v. Finney*, 40 Mo. 449; *Doe v. Birch*, 1 M. & W. 402; and, again, the same author, on p. 513, further says: "Sometimes the parties agree that upon the non-payment of the rent the lessor may enter for breach of the condition without previous demand, and in such case a previous demand is unnecessary." *Doe v. Masters*, 2 B. & C. 490; *Assoc. v. Howland*, 5 Cush. 214; *2 Platt Leases*, 338; *Byrane v. Rogers*, 8 Minn. 281; *Sweeny v. Garratt*, 2 Disney, 601. To like effect is Gear on *Landlord and Tenant*, § 71, who says: "Conditions subsequent are those by the forfeiture or non-performance of which an estate already vested may be defeated. * * * If a lease for an estate for years declares expressly that it shall terminate upon a breach of a condition subsequent, and contains no clause of re-entry, it will then end *ipso facto;* but, if it contains a clause of re-entry, it is only voidable by re-entry." *Parmelee v. R. R., supra.* In a note to 1 *Broome & Hadley's Commentaries*, 604, it is stated that "In the case of a condition to determine a freehold estate, entry or claim is requisite; but in case of a condition of a lease for years, declaring that it shall be void in a certain event, the reversioner may treat the terms as having absolutely determined when the event happens, *without any entry.*"

Coming now to the case of *Cooke v. Brice*, 20 Md. 397, we think it strongly supports the case of the appellee.

The condition in that case was, "That in case the rent reserved shall be in arrears and unpaid for the space of six months the lease shall be void." In this case the condition is more explicit and direct, and leaves nothing to inference, and, if we adopt LORD TENTERDEN's excellent rule of construction, we will experience no difficulty in saying that the Court below committed no error in rejecting the appellant's prayer.

There yet remains for our consideration the question as to the plaintiff's right to maintain the action in the manner in which it has been brought. It is contended that the character of a party, whether acting indirectly or in a representative capacity, must appear. If in the progress of the case in the Court below it had appeared that the plaintiff had no interest therein authorizing him to maintain the action, it would have been then and there an easy matter to have availed of his lack of authority to sue. But instead of seeking to take action on the question, the defendant allowed the plaintiff to prove without objection by the very terms of the deed from Bonaparte to the plaintiff that he held the property in trust for the Mayor and City Council of Baltimore, &c. We think it clearly appears from the evidence that the appellee, as trustee, held such an interest in the property as authorized him to maintain this action. Finding no error in the rulings of the Court below, we affirm its judgment.

*Judgment affirmed with costs.*

(Decided June 20th, 1895.)