# BALTIMORE CITY COURT.

Filed January 24, 1907.

CALVERT BUILDING AND CON-
STRUCTION COMPANY
VS.
HENRY A. BREHM.

*John E. Semmes* for plaintiff.
*D. Meredith Reese* for defendant.

SHARP, J.—

The facts out of which this controversy arises are as follows: The plaintiff is the owner of an office building in the city of Baltimore, and on December 16, 1904, by an agreement in writing, leased to the defendant "the rear basement room, corner Bank lane and Equitable court," * * * "for the term of six years, to commence on the 1st day of January, 1905, or as soon thereafter as the premises are ready for occupancy, at the rent of one thousand dollars ($1,000) per annum, payable in equal monthly payments in advance, on the first of each month in each year, at the office of the lessor, in the city of Baltimore, during business hours."

The lease contained the following stipulation:

"10. It is further agreed that if said rent, in whole or in part shall at any time be in arrears and unpaid, said lessor may distrain therefor and, if said rent, in whole or in part, shall be in arrear and unpaid for the period of fifteen days, or the lessee for a like period of fifteen days fail to comply with any of the conditions of this lease, or notice given under the terms hereof, then the lessor may re-enter upon the premises hereby rented without further form or process of law, and such re-entry shall constitute a termination of this lease. No such termination of this lease, however, nor recovering possession of the premises shall deprive the lessor of any other action against the lessee for possession for rent or for damages."

The tenant took possession under the lease and has since used the premises for "a bar and restaurant."

On October 1, 1905, the rent due on that day was not paid. On October 23, 1905, Mr. Riggs, one of the officers of the plaintiffs, and Mr. Lauderman, the manager of the building, visited the rented premises and on behalf of of the plaintiff notified Mr. Geisendeffer, the barkeeper in charge of the place, that a forfeiture had occurred under the terms of the lease by non-payment of rent, and that their visit was for the purpose of making a re-entry under the terms of the lease. Mr. Riggs then stated that Mr. Lauderman, the manager of the building, would take charge of the premises. The following paper was left with Mr. Geisendeffer and delivered by him to the lessee.

"October 23, 1905.

"Henry A. Brehm,

"Trading as George Brehm and Son,

"Calvert Building, Baltimore, Md.

"Sir—

"By the terms of the lease dated December 16, 1904, between yourself and the Calvert Building and Construction Company for premises in the Calvert Building it is provided that if the rent therein reserved is in arrears for a period of fifteen days that the lessor may re-enter upon the premises, and such re-entry shall constitute a termination of the lease.

"Your rent under said lease being now more than fifteen days in arrear the Calvert Company has re-entered said premises, and hereby notifies you that said lease is terminated in accordance with its terms.

"Very respectfully,

"(Signed) Wm. H. Whitridge,
"President."

On the following day the lessee made a legal tender of the rent due.

On November 17, 1905, the lessor gave the lessee notice to quit the premises at the expiration of thirty days.

Proceedings were afterwards instituted before a justice of the peace for the possession of the property, the justice after a trial gave judgment for the plaintiff. An appeal was taken to this court where the action of the magistrate was necessarily reversed for technical reasons.

Calvert Construction Co. vs. Brehm, City Court.

Docket No. 29, 1906, Folio 420.

On March 5, 1906, the following notice was given by the lessor to the lessee:

"Henry A. Brehm,

"Trading as George Brehm and Son, "Calvert Building, Baltimore, Md.

"Sir—

"By the terms of the lease dated December 16th, 1904, between yourself and the Calvert Building and Construction Company for the premises in the rear basement room, corner of Bank lane and Equitable court, in the Calvert Building, it is provided that, if the rent therein reserved is in arrears for a period of fifteen days, the lessor may re-enter upon the premises and such re-entry shall constitute a termination of the lease.

"Your rent under the said lease being more than fifteen days in arrear the Calvert Building and Construction Company re-entered the said premises, and by letter dated October 23rd, 1905, notified you thereof and that thereby the said lease was terminated in accordance with its terms.

"The said Calvert Building and Construction Company being now desirous to have again and repossess the said premises, in rear basement room, corner of Bank lane and Equitable court, in the Calvert Building, hereby gives you notice to remove from and quit the same at the expiration of thirty days from the date hereof.

"Dated the fifth day of March, 1905.

"(Signed)   Wm. H. Whitridge, "Prest."

The lessee refused to vacant the premises, and has on the first of each month tendered the rent due, together with all arrears.

On April 4, 1906, a complaint was filed by the lessor before a justice of the peace for a summary of ejectment.

On April 25, 1906, the justice gave judgment for the defendant.

From the judgment the plaintiff has appealed.

At the trial of the case in this court, before the taking of any testimony, the defendant filed two motions: First, a motion to dismiss the case for want of jurisdiction; and second, a motion to dismiss the case "because it conclusively appears from the papers in this case that due notice to quit had not been given to said Henry A. Brehm, trading as George Brehm & Son, tenant."

In support of the first motion the defendant contends that the remedy of the plaintiff, if he has any, is by action of ejectment at common law in one of the Superior Courts and not by summary proceedings before a justice of the peace, that the jurisdiction of justices of the peace in cases for summary ejectment is confined to cases where the tenancy has expired by lapse of time and not to tenancies forfeited by breach of condition.

The Constitution of Maryland, Article 4, Section 42, provides * * * "justices of the peace shall hold their office two years, and shall have such jurisdiction, duties and compensation, subject to such right of appeal in all cases from the judgment of justices of the peace as hath been heretofore exercised or shall be hereafter prescribed by law."

The proceedings for summary ejectment are entirely statutory. The jurisdiction of the justice of the peace to try this case must be found, if it existed, either in the Code, Public General Laws, Article 53, Section 1, or City Charter, Section 846.

There are no other statutes in this State under which the proceedings taken can be sustained. Article 75, Section 73, of the Code of Public General Laws has no application to this case.

Article 53, Section 1, of the Code provides: "In all cases wherein any interest in real estate shall be leased for any definite term or at will, and the lessor, his heirs, executors, administrators or assigns, shall desire to repossess the same after expiration of the term, for which it was leased, and

shall give notice in writing one month before the termination of said lease to the tenant or the person actually in possession of the premises to remove from the same at the end of said term of the expiration of said will, and if the said tenant or person in actual possession shall refuse to comply therewith, the lessor, his heirs, executors, administrators or assigns may make complaint thereof in writing to any justice of the peace of the county or city wherein such real estate is situated," &c.

It is evident that this section of the Code applies only to a tenancy for a fixed term or at will and not to a tenancy terminated by breach of condition. Thirty days' notice could not be given by the landlord of a breach of a condition by the lessee. It would be an unreasonable and forced construction of this statute to hold that the provision for notice referred to the act of re-entry for breach of condition. I can find no evidence in Article 53 of the Code to indicate that the Legislature had any intention to extend this act beyond the tenancies particularly referred to. Indeed Section 6 of Article 54 confirms the view I have expressed. It refers to tenancies for fixed periods only.

If, therefore, the tenancy under which the lessee, the defendant in this case, held when the notice to quit was given was not for a definite term or will, Article 53, Section 1 of the Code has no application.

The term created by the lease under consideration was for six years, and would not have expired until 1911, but the lease provided that "if the rent, in whole or in part, shall be in arrear and unpaid for a term of fifteen days the lessor may re-enter upon the premises rented without further form or process of law, and such re-entry should constitute a termination of this lease."

The rent due October 1, 1905, not having been paid within fifteen days as stipulated, the lessor, on October 23, 1905, re-entered. The action of Mr. Riggs, one of the officers of the plaintiff, already described, was a valid and effectual re-entry.

18 E. of Law, 381. "Cyc." vs. 15, L. 1055. Damper's case, 1 S. Leading cases, 128, C. C. Darnles vs. Wood, 2 Barn. & Ald., 724. Turner vs. Bennett, 9 M. & W., 646.

After re-entry by the lessor, the lessee's rights under the lease were gone, and he became a tenant by sufferance; the lessor held of his former estate.

Cook vs. Brice, 20 Md., 400; Abrams, vs. Tappe, 60 Md., 323; McCubbin vs. Whetcroft, 4 H. & McH., 99; Manning vs. Brown, 47 Md., 506; Howard vs. Carpenter, 22 Md., 28; Morris vs. Smith, 90 Md., 76; Taylor on Landlord and Tenant, 7 Ed., S., 488; Ibid, S., 64; S., 65, Sec. 864, page 85, Volume 1.

A demand for the rent before the re-entry was not required. Such demand was waived by the terms of the lease. The rent was payable at the office of the plaintiff during business hours, and was not paid; the lease provided that if the rent was not paid within fifteen days, the lessor might re-enter upon the premises "without further form or process of law." Shanfelter vs. Horner, 81 Md., 629.

Brehm & Co., the tenants, having by the re-entry become tenants by sufferance, Art. 54, S. 1, has primarily (without reference to Section 846 of the City Charter) no application, and these proceedings cannot be sustained under that section of the Code.

Section 846 of the City Charter is as follows: "If lands or tenements be held in said city by tenancy at will, at sufferance or *pur autre vs.* thirty days' notice by the landlord or reversioner to the tenant or occupant shall terminate such tenancy at the expiration of thirty days."

The notice required by Section 846 was given by the letter of Mr. Whitridge to Mr. Brehm dated March 5, 1906, already referred to.

Section 850 provides: "Such notice, without any additional notice, shall entitle the landlord to the benefit of the law providing for the speedy recovery of land and tenements held over by tenants." The law referred to in Section 850 could only have been Article 53 of the Code of Public General Laws.

Compare Code 1888, Public General Laws, Article 53, Section 1. Public Local Laws, Article 4, Section 863. Code of 1860, Public General Laws, Article 53, Section 1. Code of 1860, Public Local Laws, Article 4, Section 884.

It therefore appears that the justice of the peace had jurisdiction under

Section 850 of the City Charter, to try the case. The proceedings appear to have been regularly conducted under that section, and, so far as the procedure is concerned, under Article 53 of the Code.

The motion to dismiss for want of jurisdiction must therefore be overruled.

If the motion to dismiss because it appears that proper notice was not given the lessee is regular, and could be considered in advance of the hearing on the merits, it must be overruled. The notice given by Mr. Whitridge was a proper one. City Charter, Section 846.

On the merits of the case, the conclusions I have reached are as follows: On the failure to pay the rent within fifteen days as stipulated in the lease, the lease became voidable at the option of the lessor. The entry of Mr. Riggs on behalf of the plaintiff constituted an election on the part of the lessee to avoid the lease and would, *at law*, entitle the lessor to the possession "as of his original estate." *At law* the lease would have been at an end and the lessor could have maintained an ejectment. Morrison vs. Smith, 90 Md., 77. This case was an action of ejectment, no equitable pleas were filed, the case was determined entirely on the legal rights of the parties. See also cases cited ante.

It is, however, a well settled principle in equity that where a stipulation for a forfeiture on non-payment of rent is inserted in a lease as mere security for the payment of rent, equity will treat the provision for forfeiture as a penalty, and will, on payment or tender of the rent, relieve against the forfeiture.

It is obvious that the stipulation of the lease now under consideration for the forfeiture on failure to pay the rent is of this character. Section 10 of the lease in which the clause of the forfeiture is found refers entirely to the payment of the rent and to no other subject.

The whole purpose of Section 10 of the lease is to provide for the collection of the rent either by distraint, re-entry or an action of debt.

The single cause of forfeiture relied on by the lessor in this case is the failure to pay the rent within fifteen days as stipulated.

The case is on the merits controlled by the decision of the Court of Appeals in the case of Carpenter against Wilson, 100 Md., 22. The lease in that case contained a stipulation for re-entry if the rent was thirty days in arrears. The lease was in many respects similar to that now under consideration. A default in the payment of rent occurred and the lessor re-entered. Subsequently the lessee tendered the rent.

Court of Appeals said: "In second Story's Equity Jurisdiction 1321, it is said, that it is admitted that when the condition of forfeiture is merely a security for the non-payment of money (such as the right of re-entry for the non-payment of rent) there is to be treated as a mere security and in the nature of a penalty and is irrelievable in equity. See also Am. & Eng., Ency. 18, 389."

Code P. G. L., Art. 75, Sec. 73, is declaratory of the same principle. It appears from the record in that case that the rent was not tendered until after the action of ejectment had been instituted.

It is contended in the case at bar that a distinction must be made between covenants and conditions, that equity will relieve from a forfeiture for breach of covenant, but not for breach of condition. It is sufficient to say in this connection that the stipulation in this lease produced in this case is substantially the same as the stipulation relied on for a forfeiture in the case of Carpenter vs. Wilson.

Equity regards the substance and not the form, and whatever may be the legal form of an obligation, if it is intended as a security for the payment of money and in the nature of a penalty, equity will relieve. This relief in equity does not depend on fraud, accident or mistake. Where these grounds for the interference of equity exist, which is not claimed in this case, they present additional reasons for equitable relief against the forfeiture. 18 Ency. Law, p. 391.

In this case no loss or damage of any kind to the lessor has been shown except the loss of rent. Payment of the rent will be full compensation for any damage the plaintiff has sustained.

Interest is not chargeable, because the rent was tendered when due, except in the case of the instalment of $83.33, due October 1, 1905, which was

not tendered until October 24, 1905. Interest is chargeable on this sum from October 1 to October 24.

It was contended at the trial of the case at bar as an additional defense on equitable grounds, that the lessee was misled by the conduct of the lessor in habitually accepting the rent when overdue, and that the conduct of the lessee was inequitable in suddenly departing from the previous practice, and declaring a forfeiture without a previous demand for rent, or notice to the tenant that prompt payment would be insisted upon; and that the stipulation for a forfeiture for non-payment was waived by the conduct of the parties in habitually paying and accepting rent overdue. The case of Carpenter against Wilson is relied upon for the support of its contention.

There is this difference between the cases: In the case at bar there was always a reason for the forbearance. It was agreed that the lessee should have possession and the rent begin on March 1. But the room was not ready for occupancy at that time and the defendant claimed and was allowed an allowance of one-half of a month's rent from March 1 to March 15. The rent from March 15 to the 30th, and for the month of April was paid on May 12, when the matter was adjusted.

The tenant at this time claimed an allowance of $300 for repairs, and asked that this indebtedness should be set off against the rent. This was agreed to and no further payments of rent were made or demanded until September 12, when checks were exchanged, the tenant giving his check for $333.32, which was the rent up to the 31st of August, and the plaintiff giving back a check for $300 in settlement of the claim of the tenant. There was in fact but $33.32 paid. The rent due September 1 was paid September 30. When the rent due October 1st became due, there was no excuse for non-payment.

It would not be a fair interpretation of the conduct of the parties, particularly in view of the letter of Mr. Whitridge of June 7, 1905, to conclude that the parties intended to waive the stipulation for the prompt payment of rent. I do not think that the tenant has any reason to claim, particularly in view of the claims for allowances for the delay in obtaining possession and for repairs, the controversy about the adjoining room, and Mr. Whitridge's letter, that he was in any way misled. The letter was fair notice that the landlord would insist on his legal rights. Ordinary prudence ought to have prompted anyone after the receipt of such a letter to perform the contract according to its terms. The case of Carpenter against Wilson has no application to this branch of the case. In that case the forbearance was deliberate, and it might well be said that the facts set forth in the equitable plea filed in that case that the lessee had been misled by the conduct of the lessor into believing that prompt payment would not be insisted upon.

This case is on the merits decided on the single proposition "that when the condition of forfeiture is merely security for the non-payment of money (such as the right of re-entry for the non-payment of rent) then it is to be treated as a mere security in the nature of a penalty and is relievable in equity." Brehm & Co., the tenants, having tendered the rent, though after a re-entry and no counter equities appearing are entitled to relief in equity against the forfeiture.

This is a defense which can be made in those proceedings.

Gelston vs. Siegmund, 27 Md., 344.

It follows from what has been said that the judgment must be affirmed.