## LOUIS E. SCHLERF ET AL.

*vs.*

## BENJAMIN F. BOND.

*Landlord and Tenant—Condition Against Assignment—Waiver of Breach—Concurrent Lease—Right to Enforce Forfeiture.*

The breach of a condition against the assignment of a lease is not waived by the landlord's subsequent acceptance of rent from the assignee of a previous lease of the same premises which contained no prohibition of assignment, although such assignee was also the assignee of the subsequent lease.                    p. 14

The acceptance of a month's rent for a floor in a building, by agents of the owners, from assignees of. the lease thereof, *held* not to show a waiver of a provision in the lease requiring the owners' consent to an assignment, the agents having no authority to give such assent, and the owners having expressly refused such assent on the ground that they had made to another a lease of the whole building, to become effective at the end of the month.                    pp. 14, 15

A lease of a building "subject to the existing lease to K. covering the first floor and rear part of the basement" *held* to place the lessee in the relation of landlord to K., so as to entitle the lessee to enforce a clause of forfeiture in the lease to K.

pp. 15-18

*Decided June 28th, 1921.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

Action of ejectment by Benjamin F. Bond, trading as the B. F. Bond Paper Company, against Louis E. Schlerf and Frank V. Antos, trading as the P. & S. Lunch Room. From a judgment for plaintiff, defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, ADKINS, and OFFUTT, JJ.

Opinion of the Court.

*John Hinkley* and *Thos. N. Copenhaver,* with whom was *Frederick J. Singley* on the brief, for the appellants.

*William P. Lyons* and *Edward Gernand Wright,* with whom was *Robert J. McGregor* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

In April, 1919, one G. A. Parke was the lessee, under a lease from R. Brent Keyser and William Keyser, Jr., surviving trustees of the estate of William Keyser, deceased, of the first floor and rear part of the cellar of the property known as 37 South Hanover Street, in the City of Baltimore, Maryland, whereat he at the time conducted a lunch room under the name of "Parke's Lunch Room."

At the time mentioned above, Parke began negotiations for the sale of the lunch room, including the business, good will, fixtures, etc., to one Lee E. Kellam, and at the same time Kellam started negotiations with the trustees for the lease of said property for a term commencing at the expiration of Parke's lease, which would expire with the 30th day of November, 1919. The negotiations resulted, on the 17th day of April of said year, in the sale by Parke to Kellam of the lunch room and the execution of a lease by the trustees to Kellam of said premises for the term of three years, commencing with the first day of December, 1919; and upon the same day the lease to Parke was assigned by him to Kellam.

In the lease of April 17th, 1919, from said trustees to Kellam, are found the following provisions:

First. That the lessee, Kellam,

> "will not under penalty of forfeiture of the lease assign this lease for the term hereby created, or underlet the said premises, or any part thereof, without *the written consent* of the lessors, or their agents endorsed thereon * * * ; and that if default shall be made in the payment of the rent when due, or any of the covenants herein contained, it shall be lawful for the lessors to re-enter said premises and remove all persons therefrom."

Second.   That

> "the rights and liabilities herein given to or imposed
> upon the said lessors and the said lessee shall extend to
> the successors, heirs, executors, administrators, or as-
> signs of each party as though they were in each case
> named, unless where the assigns are expressly excluded
> from certain rights."

The appellee in this case, B. F. Bond, trading as the B. F.
Bond Paper Company, for years prior to the execution of the
lease from the trustees to Kellam, had been the lessee and
occupant of warehouses Nos. 33 and 35 South Hanover Street,
under lease from said trustees.

In 1919, it was found by the appellee that, because of his
growing business, more space was needed for warehouse pur-
poses.   At this time his lease for Nos. 33 and 35 had about
a year to run.   But after negotiating with the trustees of the
Keyser estate, he on the 20th day of August, 1919, cancelled
his existing lease to be effective after January 1st, 1920, and
at such time leased not only warehouses Nos. 33 and 35, but
also warehouse No. 37, for a term of seven years commenc-
ing on the first day of January, 1920.

It also appears from the record that Kellam, who had, on
the 17th day of April, 1919, leased the first floor of ware-
house No. 37 and the rear of the cellar, did, on the 29th day
of May thereafter, sell the lunch room to Purdy and Quintal
and gave to them possession of said premises, where they con-
tinued to conduct a lunch room without obtaining the written
consent of the trustees to an assignment of the lease, and
without their written consent to sublet the premises to the
purchasers, and Kellam's connection therewith ceased.

On the 29th day of July, 1919, Purdy and Quintal sold
out to the appellants, Louis E. Schlerf and Frank V. Antos,
and gave to them possession of the premises, Purdy and Quin-
tal at such time severing all connection therewith.

The record discloses that about the first of October, 1919,
after the appellants purchased the lunch room and after the

lease to the appellee, the appellants called upon Mr. Wheat, the representative of the trustees, the only ones authorized to consent to the assignment of the Kellam lease, or to a subletting of the leased premises, asking that the trustees consent to an assignment of said lease. This Mr. Wheat said the trustees could not do, as they had leased the premises then occupied by the appellants to the appellee from January 1st, 1920.

The appellants not only went to the trustees, but also went to Messrs. Baldwin & Frick, agents of the trustees for the collection of the rents, etc., and again they were told that the premises were rented to the appellee, and that all rentals paid under that lease, if any, after January 1st, 1920, would be payable to the appellee. Upon this suggestion the appellants, through Kellam, early in January, 1920, sent to the appellee a check for that month's rent, but the appellee returned it, saying, in substance, that the provisions of the Kellam lease in respect to the necessity of obtaining the written consent of the trustees to an assignment of it, or to subletting the leased premises, had been violated, and the lessee's rights under the lease had been forfeited and his tenancy ended; and as he, the appellee, under his lease with the trustees, stood in their place as to their rights under the Kellam lease, he demanded possession of said premises. This demand was refused and the appellee brought this action of ejectment to recover possession of said premises, which resulted in a verdict and judgment for the plaintiff, and from that judgment the appeal in this case was taken.

There are thirteen exceptions in all to the rulings of the court. The last of these is upon the court's refusal to grant the defendant's prayer asking the court, sitting as a jury, to rule that there was no evidence in the case legally sufficient to entitle the plaintiff to recover. The other twelve exceptions relate to the evidence. We will first consider the court's ruling upon the prayer.

It is not contended by the appellants that they, or any of their predecessors, through whom they claim as tenants, ever

obtained from the trustees a written consent to an assignment of the Kellam lease, or to the subletting of said premises, but they claim that the necessity for so doing was waived by the acts of both the trustees and the appellee, and that consequently no forfeiture resulted from any breach of the lease.

Those who at different times occupied the leased premises, without the written consent of the trustees to an assignment of the Kellam lease, or without their written consent that the same should be sublet to them, paid rent to Messrs. Baldwin & Frick, agents of the trustees for the collection of the rent for said leased premises, although, as claimed by the appellants, Messrs. Baldwin & Frick at the time knew that such parties were occupying said premises as sub-lessees without the written consent of the trustees, thereby recognizing them as tenants under the lease and waiving the requirement that the lease should not be assigned or the premises sublet without their *"written consent."*

This contention, however, cannot be adopted upon the facts disclosed by the record. It is shown that not one of the changes in the occupancy of said premises was made after the lease from the trustees to the appellee, but all were made during the period covered by the lease from the trustees to Parke, that was taken over by Kellam; and nowhere is it shown that the Parke lease contained any provision requiring the consent of the lessors to an assignment of it, or to the subletting of the premises.

It is also true that the alleged payments to Messrs. Baldwin & Frick by the said occupants of the premises were all made for rent accruing under the Parke lease, with the sole exception of the payment made for the month of December, which was before the lease to the appellee became effective, and after the appellants had been expressly told by the trustees, or their representative, Mr. Wheat, that because of the lease to the appellee they could not give their consent to the assignment of the lease to Kellam, and so it could hardly be said that the acceptance of that money by Baldwin & Frick,

who the evidence shows were without authority to consent to
an assignment of the lease, or to the subletting of the prem-
ises, for that month was a waiver of the provision of the lease
to which the trustees had strictly adhered in their refusal to
give their consent to an assignment of the lease, or the sub-
letting of the premises. At most their acceptance of said
money under such facts and circumstances meant no more
than that the appellant could with their consent occupy the
premises until the lease of the appellee became effective on the
first day of January, when they would be subject to the pro-
visions of the lease made to Kellam.

It was not until the first day of January, 1920, that the
appellee was to have possession of the premises, although his
rights thereto were secured by the lease to him from the trus-
tees executed so early as the 20th day of the preceding August,
and by the express provision of the Kellam lease the lessors'
rights were conferred upon him, to whom they had leased the
premises subject to the lease to Kellam.

That the appellee was in effect the assignee of the lessors or
one who stood in their place in respect to their rights under
the lease to enter and take possession of the premises in case
of default by the lessee, Kellam, is shown by the facts con-
tained in the record.

Warehouse No. 37 was at the time of the execution of the
lease to the appellee occupied by a number of tenants under
leases that expired with the year 1919, with the exception of
Kellam's, and it was for that reason that the lease to the
appellee was not to become effective until such time. But as
to the Kellam lease, which did not, under its provisions, ex-
pire for three years from the first day of December, 1919, the
lease to the appellee was made subject thereto, that is to say,
the appellee was to pay as rental for said three warehouses,
including warehouse No. 37, that was in part occupied by
those claiming under the Kellam lease, the sum of nine thou-
sand dollars per annum, commencing from the said 1st day
of January, 1920; and this was all the rental that the said
trustees were from that time to receive for said three ware-

houses. They were not after that date to receive the rental
that was to be paid to them under the Kellam lease, for this
was to be paid by Kellam, so long as his lease was effective, to
the appellee; or in other words Kellam was after the date
mentioned—January 1st, 1920—to be the tenant of the appel-
lee and was to pay the rental for that part of No. 37 that was
occupied by him to the appellee as the successor of the trustees
in respect to same.

That this was the meaning of the lease to the appellee, and
that such was the understanding of the parties thereto, is not
only shown by the lease itself and the direction of the trustees
that such rent be paid to the appellee after January 1st, 1920,
but also by the following letter to the appellee from Baldwin
& Frick, agents of said trustees, dated the 7th day of August,
1919, a few days before the execution of the lease:

                                    "August 7th, 1919.
    "B. F. Bond Paper Company,
        "33-35 S. Hanover St.,
            "City.
            (For Attention Mr. B. F. Bond.)
    "Gentlemen:
        "Referring to the conversation over the telephone
    this morning, have taken up with the William Keyser
    Estate the matter of turning over to you the building
    No. 37 Hanover St. after January 1st, 1920, when the
    lease with the occupants of the four upper floors ex-
    pires, and making a new lease with you covering the
    premises 33, 35 and 37 S. Hanover St., for a term of
    five or seven years from January 1st next, subject to
    the lease on the lunch room in the first floor of No. 37,
    which would then have about one year to run, and the
    Keyser Estate would be willing to enter into an agree-
    ment with you for these premises at a total rental of
    $9,000.00 per annum.
        "For your information as to how that figure is ar-
    rived at, would say that we are calculating $4,200.00
    for the premises which you now occupy and which is
    the rental you are now paying, and it is not contem-
    plated any increase, and $4,200.00 for the corner build-

ing, which is $300.00 less than the present occupants would give us if we allowed them to remain, and we have added to this 10 per cent. on $6,000.00, the estimated cost of the improvements necessary to the premises for your occupancy. You will see that if we just left the situation alone they could obtain a total of $8,-700.00 for your building under your present lease and the corner building when released to the present tenants, so it really only means an advance of $300.00 for the very heavy expenditure for alterations and improvements.

"Very truly yours,<br>"Baldwin & Frick,<br>"By Frick."

It will be observed that in the above letter it is said that the Kellam lease would have about one year to run after January 1st, 1920. This was an error which was afterwards corrected in the lease when prepared and executed, by stating that the length of the term was about three years.

The lease provides:

"That the said lessors, in consideration of the payment of the rent hereby reserved, and the performance of the covenants hereinafter mentioned on the part of the said lessee to be performed, do demise and let unto the said lessee, for the purpose of carrying on the business of wholesale dealers in paper, the property and premises known as Numbers 33, 35 and 37 South Hanover Street, in the City of Baltimore, Maryland, for the term of seven (7) years, beginning on the first day of January, 1920, at and for the annual rental of nine thousand ($9,000.00) dollars, payable in equal monthly installments in advance of seven hundred and fifty ($750.00) dollars, on the first day of each and every month, during the term of said tenancy; *and subject to the existing lease of Lee E. Kellam, covering the first floor and rear part of the basement of number 37 South Hanover Street, of which a copy is hereto attached.*"

It is thus indicated that the lessors intended that the relations of the appellee and Kellam after the lease of the appellee became effective, January 1st, 1920, was to be that of landlord and tenant, and that this was the understanding of the parties to the lease is further shown by Kellam's letter to the appellee of the 12th day of January, 1920, in which he says:

"Enclosed please find my check for the month of January, 1920, the same being for rent for first floor and part of basement at No. 37 South Hanover Street.

"I am sending this check to you through the request or by order of Frick & Baldwin, Agents."

In reply to this letter McGregor & Wright, attorneys for the appellee, wrote Kellam saying:

"We are returning herewith your check, as the B. F. Bond Paper Co. have leased for a term of years from R. Brent Keyser and Wm. Keyser, Jr., surviving trustees of the estate of Wm. Keyser, deceased, the property known as 37 S. Hanover St. Therefore, the B. F. Bond Paper Co. now stand in the place of the original lessors and now wish to advise that a stipulation of the original lease between R. Brent Keyser and Wm. Keyser, Jr., surviving trustees of the Estate of Wm. Keyser, deceased, and yourself, made on the 17th day of April, 1919, which was to become effective on the first day of December, 1919, and ending on the 30th day of November, 1922, has been violated, and by the provisions of the said lease above referred to, said tenancy ceases to exist.

"As the B. F. Bond Paper Co. now stand in the place of the said original lessors, we wish to advise, in behalf of our clients, that possession of the premises of the first floor of said 37 S. Hanover Street is requested on or before February 1st, 1920.

"It is our desire to gain possession in an amicable and peaceful manner, but we also desire to state that we have advised and also consider our clients have a legal right to the premises 37 S. Hanover Street, and,

therefore, no trouble or expense will be spared to obtain such possession."

This brings us to the exceptions to the evidence.

The evidence admitted under the first exception was practically the same as that which the witness had previously given without objection; and there was no reversible error in admitting the evidence in the second exception. The third, fourth, and sixth exceptions seem to have been abandoned by the appellants, but if not, we find no error in the court's rulings thereon.

The fifth and seventh exceptions were to the refusal of the court to admit a bill and receipt for goods bought from the appellee by Purdy & Quintal when proprietors of the lunch room, as tending to show that the appellee had notice of the occupancy of the lunch room by them. This fact, as we have already said, did not reflect upon the issues and was properly refused.

The other exceptions were to the rulings of the court in refusing to permit certain questions asked of Messrs. Wheat and Peppler to be answered. The evidence sought by these questions, we think, was either immaterial or irrelevant, but if not, we fail to see how the court's action thereon in any way injured the defendants.

As the declaration in this case appears to conform to the simplified practice in cases of ejectment (1 *Poe, Pl. & Pr.,* Sec. 579), the court committed no error in overruling the demurrer thereto.

The judgment of the court below will be affirmed, as we find no errors in its rulings upon the questions presented by this appeal.

*Judgment affirmed, with costs.*