709 A.2d 125

**Sandra K. MARTIN**

v.

**HOWARD COUNTY, Maryland.**

**No. 13, Sept. Term, 1996.**

Court of Appeals of Maryland.

May 13, 1998.

Debra Gardner, Legal Aid Bureau, Inc., Frederick, for petitioner.

F. Todd Taylor, Jr., Senior Asst. County Solicitor (Barbara M. Cook, Howard County Solicitor, on brief), Ellicott City, for respondent.

Jane E. Schukoske, Denise M. Duval, Baltimore, for Amicus Curiae Franklin Square Community Association, Inc.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI * and RAKER, JJ.

ELDRIDGE, Judge.

Maryland Code (1974, 1996 Repl.Vol.), § 14–120 of the Real Property Article, creates a cause of action to "abate" a nuisance when real property is used in connection with certain

---

* Karwacki, J., now retired, participated in the hearing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of the opinion.

controlled dangerous substances or controlled paraphernalia. The plaintiff in this case filed a complaint under § 14–120, seeking an order requiring a tenant to vacate a federally subsidized apartment and seeking restitution of the property to the landlord. The question presented is whether, in light of the nature of this proceeding, Article 23 of the Maryland Declaration of Rights gives the tenant a right to a jury trial.[1]

## · I.

Before turning to the facts of this case, we shall briefly review § 14–120 of the Real Property Article. Section 14–120 was enacted by Ch. 505 of the Acts of 1991. According to the title of Ch. 505, the enactment was "[f]or the purpose of permitting certain persons to bring an action to abate a nuisance when certain property is being used for certain controlled dangerous substance offenses."

Subsections (a)(3) and (a)(4) of § 14–120 together define the meaning of "nuisance" for purposes of the statute as follows:

"(3) 'Controlled dangerous substances' has the meaning stated in Article 27, § 279(a) and (b) of the Code.

"(4) 'Nuisance' means a property that is used:

(i) By persons who assemble for the specific purpose of illegally administering a controlled dangerous substance;

(ii) For the illegal manufacture, or distribution of:

1. A controlled dangerous substance; or

2. Controlled paraphernalia, as defined in Article 27, § 287(d) of the Code; or

---

1. The second paragraph of Article 23 states as follows:
 "The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five thousand dollars, shall be inviolably preserved."
 The second paragraph of Article 23 of the Declaration of Rights was formerly Article XV, § 6, of the Constitution. The provision was transferred to the Declaration of Rights by Ch. 681 of the Acts of 1977, ratified by the voters in November 1978.

(iii) For the illegal storage or concealment of a controlled dangerous substance in sufficient quantity to reasonably indicate under all the circumstances an intent to manufacture, distribute, or dispense:

1. A controlled dangerous substance; or

2. Controlled paraphernalia, as defined in Article 27, § 287(d) of the Code."

With respect to leasehold property, subsection (a)(6)(i) defines a "tenant" as "the lessee or a person occupying property, whether or not a party to a lease."

Section 14–120(b) specifies that the judicial proceedings authorized by the statute are under Code (1974, 1996 Repl. Vol.), § 4–401 of the Courts and Judicial Proceedings Article, which provides for actions within the *exclusive* original civil jurisdiction of the District Court of Maryland. Thus, an action under § 14–120 must initially be brought in the District Court. Subsection (b) goes on to specify that the action "may be brought by:

(1) The State's Attorney of the county in which the nuisance is located;

(2) The county attorney or solicitor of the county in which the nuisance is located; or

(3) A community association within whose boundaries the nuisance is located."

Subsections (e) and (f) delineate the remedies available in an action under § 14–120. Subsection (e), relating to equitable remedies, states as follows:

"(e) The court may issue an injunction or order other equitable relief whether or not an adequate remedy exists at law."

Subsection (f) provides for additional remedies as follows:

"(f)(1) Notwithstanding any other provision of law, and in addition to or as a component of any remedy ordered under subsection (e) of this section, the court, after a hearing, may order a tenant with knowledge of the existence of the nuisance to vacate the property within 72 hours.

(2) The court, after a hearing, may grant a judgment of restitution or the possession of the property to the owner if:

(i) The owner and lessee are parties to the action; and

(ii) A tenant has failed to obey an order under subsection (e) of this section or paragraph (1) of this subsection.

(3) If the court orders restitution of the possession of the property under paragraph (2) of this subsection, the court shall immediately issue its warrant to the sheriff or constable commanding execution of the warrant within 5 days after issuance of the warrant.

(4) The court may order the owner of the property to submit for court approval a plan of correction to ensure, to the extent reasonably possible, that the property will not again be used for a nuisance if:

(i) The owner is a party to the action; and

(ii) The owner knew of the existence of the nuisance."

The remaining provisions of the statute concern the admissibility of evidence in an action under § 14–120, costs, attorney's fees, and times for appeal.

## II.

In 1994 Howard County, pursuant to § 14–120, filed a "Complaint for Abatement of Nuisance and Restitution of Possession of the Premises" in the District Court of Maryland sitting in Howard County.[2] The defendants were Columbia Housing Limited Partnership, Sandra Kay Martin, and Van Albert Carroll. The County alleged that Columbia Housing owned a townhouse at 5519 Cedar Lane, Columbia, Maryland, and that Martin and Carroll were tenants therein. The County further alleged that the tenants' rent was "subsidized

---

**2.** As previously mentioned, § 14–120(b) of the Real Property Article states that the plaintiffs may be the "State's Attorney of the county in which the nuisance is located" or the "county attorney or solicitor of the county in which the nuisance is located" or a "community association within whose boundaries the nuisance is located." At no place does the statute expressly authorize an action by the county itself. Since the matter of the appropriate plaintiff has never been raised by a party in this case, we shall not further explore the issue here.

by the United States Department of Housing and Urban Development, pursuant to [Chapter] 8 of [Title 42 of] the United States Code." The complaint went on to assert that Martin and Carroll "have knowingly permitted the leased premises to be used for the distribution of a controlled dangerous substance, controlled paraphernalia, or the illegal storage or concealment of a controlled dangerous substance in sufficient quantity to indicate ... an intent to distribute or dispense the same." Howard County's complaint requested the following specific relief in addition to costs and attorney's fees:

> "(a) Order Defendants Sandra K. Martin and Van Albert Carroll to vacate the property within 72 hours after a hearing on this matter;
>
> "(b) Grant Defendant Columbia Homes Limited Partnership restitution of possession of the property...."

Martin filed a timely request for a jury trial. After some procedural skirmishing in the District Court, the case was transferred to the Circuit Court for Howard County.[3] The County filed a motion in the circuit court to strike the demand for a jury trial, asserting that the action was equitable in nature and that, therefore, there was no right to a jury trial under Article 23 of the Declaration of Rights. This motion was initially denied by the circuit court.

---

**3.** Maryland Code (1974, 1995 Repl.Vol., 1997 Supp.), § 4–402(e)(2) of the Courts and Judicial Proceedings Article, provides in pertinent part as follows:

> "Except in a replevin action, if a party is entitled to and files a timely demand, in accordance with the Maryland Rules, for a jury trial, jurisdiction is transferred forthwith and the record of the proceeding shall be transmitted to the appropriate court. * * *"

Maryland Rule 3–325(c) states as follows:

> "When a timely demand for jury trial is filed, the clerk shall transmit the record to the circuit court within 15 days. At any time before the record is transmitted pursuant to this section, the District Court may determine, on its own initiative or on motion of a party, that the demand for jury trial was not timely filed."

See, e.g., *Vogel v. Grant,* 300 Md. 690, 481 A.2d 186 (1984); *Dallas v. Environmental Health,* 77 Md.App. 350, 354–357, 550 A.2d 422, 424–426 (1988).

The County also filed a new complaint in the circuit court which was identical to the complaint filed in the District Court except for the title and caption. The title was changed from "Complaint for Abatement of Nuisance and Restitution of Possession of the Premises" to "Complaint For Injunctive Relief." Nevertheless, the new complaint, like the old one, did not request an injunction against the continuation of the alleged nuisance. The only specific relief requested was an order requiring Martin and Carroll to vacate the premises, an order granting restitution of the property to the landlord, costs and attorney's fees.[4] The defendant Martin filed an answer to the circuit court complaint, denying the allegations that the defendant Carroll was a tenant or resident of the townhouse, and denying the allegations concerning nuisance, controlled dangerous substances, and controlled paraphernalia.[5] The case was scheduled for a jury trial to be held on January 9, 1995.

When the case was called for trial on January 9, 1995, counsel for the defendant landlord stated that the landlord agreed with the County's position and "consent[ed]" to the relief sought by the County. The circuit court thereupon directed the clerk to enter a judgment against the landlord; a "judgment against def. Columbia Housing" was entered on the docket, and the landlord was not thereafter treated as a party.[6]

Next on January 9, 1995, before jury selection began, and during remarks by the County's attorney when the attorney

---

**4.** Since this action was within the exclusive original jurisdiction of the District Court, a new complaint in the circuit court was not appropriate. *See* Maryland Rule 2–326(b).

**5.** The defendant Carroll at no time filed anything or appeared in either the District Court or the Circuit Court for Howard County or the Court of Special Appeals or this Court.

**6.** The nature or effect of this "judgment" has not been discussed by the courts below or the parties. As earlier mentioned, Howard County sought an order expressly granting restitution of the premises to the landlord. Section 14–120(f)(2) requires that the landlord be a party for the court to order restitution under subsection (f)(2).

referred to the caption of the complaint as a "Complaint for Injunctive Relief," the circuit judge *sua sponte* raised the issue of the defendant Martin's entitlement to a jury trial. The County reiterated its argument that the proceeding was equitable in nature and that "one does not have a constitutional right to a jury trial [in an action to enjoin] a nuisance." While acknowledging that it sought the eviction of the tenants and an order restoring the property to the landlord, the County distinguished *Carroll v. Housing Opportunities Comm'n*, 306 Md. 515, 510 A.2d 540 (1986), and similar cases "in the federal system," on the ground that those cases involved evictions and restitution of premises under leases, whereas the eviction and restitution in the present case were sought by a government entity under a statute. The County also stated that it was not relying on any argument that the amount in controversy, *i.e.* the value of the right to possession, was insufficient to trigger the constitutional right to a jury trial. Instead, the County made it clear that it was relying on the nature of the proceeding.

Martin's attorney argued that if the county were only seeking an injunction to stop the continuation of the alleged nuisance, pursuant to subsection (e) of § 14–120, Martin "would be happy" to forego a jury trial. Nevertheless, Martin's attorney went on to point out that, instead of seeking an injunction under subsection (e), the County was seeking to evict Martin and restore the property to the landlord. According to Martin's attorney, since "we are talking about taking her right to a possessory interest in the property, then she does have her right to a jury trial ..., which has been recognized in the cases *Joy v. Daniels,* [479 F.2d 1236 (4th Cir.1973) ] as well as *Carroll v. Housing Opportunities Commission,* [306 Md. 515, 510 A.2d 540 (1986) ]." Answering the circuit court's comment that § 14–120 was enacted "subsequent to that [*Carroll*] case [and] possibly in response to it," Martin's attorney specifically invoked the tenant's constitutional right to a jury trial in actions of this nature.

The circuit court agreed with the County's argument, struck its earlier order denying the county's motion to strike the

request for a jury trial, granted the County's motion, and remanded the case to the District Court for trial.[7]

Martin appealed to the Court of Special Appeals which affirmed. *Martin v. Howard County,* 107 Md.App. 331, 667 A.2d 992 (1995). In its opinion, the Court of Special Appeals acknowledged that actions by landlords to evict tenants and recover possession of property are actions at law to which the right of jury trial attaches. 107 Md.App. at 341, 667 A.2d at 997. Nevertheless, the intermediate appellate court held that an action under § 14–120(f)(1) for an order requiring a tenant with knowledge of the nuisance to vacate the premises "is clearly injunctive in nature," "presumably could be enforced through contempt proceedings," is "exclusively equitable," and thus is not the type of action for which there is a right to a jury trial. 107 Md.App. at 342, 344, 667 A.2d at 998. The Court of Special Appeals stated that "[s]uch an order, by itself, does not terminate the tenancy," that an order to vacate under § 14–120(f)(1) "would not seem to preclude even an ousted tenant from subleasing the property or assigning his lease," and that, under § 14–120(f)(1), the order could be for "a temporary ouster." 107 Md.App. at 342–343, 667 A.2d at 998. The court also relied on the definition of "tenant" in § 14–120 "to include any person 'occupying property, whether or not a party to a lease,' and so may include" persons "who are not tenants in the traditional property law sense." 107 Md.App. at 342, 667 A.2d at 998. The intermediate appellate court stated that an order to vacate the premises under § 14–120(f)(1) "is not significantly different from" a protective order, requiring an abuser to vacate the family home, issued under Maryland's Domestic Violence Act, Code (1984, 1991 Repl.Vol., 1997 Supp.), § 4–506 of the Family Law Article. 107 Md.App. at 343, 667 A.2d at 998.

The Court of Special Appeals did express the view that an order granting restitution of the premises to the landlord

---

7. The circuit court also indicated that the County could seek an order of default against the defendant Carroll in the District Court. *See* note 5, *supra.*

would terminate the tenancy, and that the restitution proceeding would be legal rather than equitable and thus subject to trial by jury. The intermediate appellate court concluded, however, that "the request for restitution of possession was not properly before" both courts below. 107 Md.App. at 344, 667 A.2d at 999. As the Court of Special Appeals construed § 14–120, the "remedy of restitution" does not "rest[ ] upon issues of fact in common with" a request for relief under subsection (f)(1), and "it cannot be granted contemporaneously with the [subsection (f)(1) ] relief, as it requires ... (1) a separate hearing, and (2) a finding of noncompliance with an ... order" under subsection (e) or subsection (f)(1). 107 Md.App. at 343–344, 667 A.2d at 998. The Court of Special Appeals acknowledged that, under its construction of § 14–120, if a tenant complies with an order to vacate under subsection (f)(1), and the premises are left vacant, there is no remedy under the statute for a statutory plaintiff or the landlord to obtain restitution of the premises to the landlord. 107 Md.App. at 344, 667 A.2d at 999. The Court of Special Appeals suggested that, in this situation, the landlord could bring an action under § 8–402 of the Real Property Article to obtain possession. 107 Md.App. at 344, 667 A.2d at 998.[8]

After the decision of the Court of Special Appeals, Martin filed in this Court a petition for a writ of certiorari which we granted. *Martin v. Howard County,* 342 Md. 263, 674 A.2d 961 (1996). Martin argues that Howard County did not seek injunctive relief in this case but, instead, sought the permanent eviction of a tenant and the restitution of the premises to the landlord. The County, according to Martin, sought "to dispossess Ms. Martin of her leasehold" interest. (Petitioner's brief at 8). Martin contends that, in light of the issues and the remedy sought, the action is "within the ambit" of an ejectment action, which is an action at law in which there is a right to a jury trial. (*Ibid.*) Martin claims that the Court of

---

8. The plain language of § 8–402, however, indicates that the section applies only when there is a tenant in possession or someone in possession holding under the tenant.

Special Appeals misinterpreted the statute and that, under the intermediate appellate court's view, she could never get a jury trial to resolve the factual issues "which could lead to her eviction from her subsidized housing." (*Id.* at 10).

Howard County responds that, "[b]y focusing on the relief requested in the Complaint, the Petitioner has opted to ignore the fact that the traditional form of actions to abate nuisances are equitable in nature to which no right to a jury trial attaches." (Respondent's brief at 3–4). The County concedes that, "if this were an action [by the landlord] to terminate the tenancy for breach of the lease ..., Petitioner would be entitled to a trial by jury." (*Id.* at 4). Nevertheless, according to the County, "the action filed in this case is an action to abate a nuisance, which always has been and continues to be an action in equity." (*Ibid.*) The County relies upon numerous cases in which governmental entities sought injunctions to require property owners to remove items from the property or to cease engaging in certain activity on the property, and the courts held that the actions were equitable, with no right to a jury trial. The two cases chiefly relied on are *Mugler v. Kansas*, 123 U.S. 623, 672–674, 8 S.Ct. 273, 303–304, 31 L.Ed. 205, 214–215 (1887) (action for an injunction to restrain the defendant from manufacturing or selling intoxicating liquors on the property); and *Adams v. Commissioners of Trappe*, 204 Md. 165, 102 A.2d 830 (1954) (action for an injunction to require a property owner to remove a gasoline pump, erected without a required permit, from the sidewalk).

### III.

"The Maryland Constitution, in Article 23 of the Declaration of Rights, guarantees a right to jury trial in those types of civil cases to which the right historically attached if the [requisite] amount in controversy" is present. *Carroll v. Housing Opportunities Comm'n, supra,* 306 Md. at 520, 510 A.2d at 542. The Constitution, therefore "guarantees a right to a jury trial in actions at law, where historically there was a right to a jury trial, as opposed to equitable actions where there was no such right." *Bringe v. Collins,* 274 Md. 338, 346, 335 A.2d 670, 676, *application for stay denied,* 421 U.S. 983,

95 S.Ct. 1986, 44 L.Ed.2d 475 (1975). *See, e.g., Higgins v. Barnes,* 310 Md. 532, 542, 530 A.2d 724, 729 (1987) ("jury trials were historically available in actions at law"); *Vogel v. Grant,* 300 Md. 690, 695, 481 A.2d 186, 188 (1984); *Knee v. City Pass. Ry. Co.,* 87 Md. 623, 624, 40 A. 890, 891 (1898). Moreover, when a party presents legal issues and legal claims for relief in an action which also involves equitable issues and claims, the party is ordinarily entitled to a jury trial on the legal issues and legal claims for relief. *Edwards v. Gramling Engineering Corp.,* 322 Md. 535, 542–543, 588 A.2d 793, 797, *cert. denied,* 502 U.S. 915, 112 S.Ct. 317, 116 L.Ed.2d 259 (1991); *Higgins v. Barnes, supra,* 310 Md. at 547–552, 530 A.2d at 731–734.

An action by or on behalf of a landlord to evict a tenant, on the ground that the tenant no longer is entitled to possession, and to restore possession to the landlord, " 'is historically an action at law to which the right to a jury trial has always attached in this State.' " *Carroll v. Housing Opportunities Comm'n, supra,* 306 Md. at 521, 510 A.2d at 543, quoting *Bringe v. Collins, supra,* 274 Md. at 346–347, 335 A.2d at 676. It is a form of the traditional legal action of ejectment. 1 John Prentiss Poe, *Pleading and Practice in Courts of Common Law,* § 272 (Tiffany ed. 1925); 1 Herbert Thorndike Tiffany, *The Law of Real Property,* § 180 (1939). *See, e.g., Annapolis Mall v. Yogurt Tree,* 299 Md. 244, 473 A.2d 32 (1984); *Parkington Apartments v. Cordish,* 296 Md. 143, 460 A.2d 52 (1983); *Purvis v. Forrest Street Apts.,* 286 Md. 398, 400–401, 408 A.2d 388, 389 (1979); *Streeter v. Middlemas,* 240 Md. 169, 213 A.2d 471 (1965); *Frederick Motor Sales v. B. & O.R. Co.,* 202 Md. 491, 97 A.2d 326 (1953); *Redwood Hotel, Inc. v. Korbien,* 195 Md. 402, 411, 73 A.2d 468 (1950); *Schultz v. Kaplan,* 189 Md. 402, 408–409, 56 A.2d 17, 20 (1947); *Brady v. Brady,* 140 Md. 403, 117 A. 882 (1922); *Schlerf v. Bond,* 139 Md. 10, 114 A. 739 (1921); *Gibbs v. Didier,* 125 Md. 486, 94 A. 100 (1915); *Shanfelter v. Horner,* 81 Md. 621, 32 A. 184 (1895).[9] Since ejectment, as well as

---

**9.** In fact, the action of ejectment originally was limited to lessor-lessee situations. Earlier writs to evict and recover possession of land did not

apply under some circumstances to leasehold interests. Beginning in the thirteenth century, through the end of the fifteenth century, special forms of trespass were developed for money damages, and later to recover possession, in the landlord-tenant situation. These special forms of trespass evolved into the action of ejectment which would only apply if there was a lease. According to Poe, "[w]hen this form of action was first resorted to, and indeed until the time of Charles II, all the proceedings in it were actual. The lease to the plaintiff, the entry upon the land by the plaintiff under such lease, and the ouster by the defendant, were all real, and were all essential parts of the case." John Prentiss Poe, *Pleading and Practice in Courts of Common Law*, § 258 (Tiffany ed. 1925). Earlier, Judge Dorsey explained (Gill, *Lectures Upon The Principles And Practice Of The Action Of Ejectment In Maryland, Delivered in 1821–22 By The Late Walter Dorsey*, 10–11 (1841)):

"[T]he Courts of Law . . . extend[ed] the remedy of ejectione firmae, and enable[d] a plaintiff to recover possession and damages. Thus it became the usual mode of trying possessory titles. Real actions fell into disuse: for in real actions the demandant could not recover damages; nor could he maintain a second action.

"The action of ejectment was originally brought by a lessee who *actually* had the right of possession, and here it is necessary to notice a most important principle, which is equally in force now, as in the origin of this action.

"As the title of the plaintiff or lessee was *derivative*, it became absolutely necessary to demonstrate that his lessor had a title to possession, or a right of entry.

"A reversioner cannot maintain ejectment, for he has no right of entry.

"In this action the right of the lessee *was* directly determined: that of the lessor collaterally. The premises were recovered by the lessee, who delivered them to the lessor."

In the mid-seventeenth century, the need for an actual lease, entry and ouster was dispensed with, and a fictitious lease, entry and ouster, with fictitious persons, were employed. An early Maryland treatise explains the action as follows (John M'Henry, *The Ejectment Law of Maryland*, 53 (1822)):

"This action has always been the creature of the courts of law, and so modelled by them as to facilitate the recovery of the possession of lands, of which the person having the right of possession has been dispossessed. It is founded on a fiction. The person who is kept out of the possession of his land and has recourse to this action to recover it, pretends he has made a lease for years to a feigned person, which tenant by another fiction, is supposed to have been turned out of possession by some mere nominal person, who is styled the casual ejector, and against whom the action is apparently brought. The declaration is served on the real tenant in possession, who generally is the person contesting the title of the land, and who, if he is determined to defend his possession, must appear and substitute himself defendant instead of the fictitious person, the casual ejector."

As pointed out by John Prentiss Poe, *supra*, § 258, "[t]he action of ejectment, with all these fictions, continued to be the only mode of recovering the possession of land in Maryland down to the year 1870.

trespass out of which the action of ejectment grew, are actions at law, the constitutional right to a jury trial attaches. *McCoy v. Johnson,* 70 Md. 490, 492–493, 17 A. 387, 387 (1889).

With respect to actions involving interests in real property or the right to possession of real property, the well-established differences between actions at law and equitable actions have been set forth in a myriad of this Court's opinions. As a general rule, where there are substantial disputes over interests in land or the right to be in possession of a parcel of land, "the proper jurisdiction is at law." *Stinchcomb v. Mortgage Co.,* 171 Md. 317, 322, 188 A. 790, 792 (1937). *See, e.g., Glorius v. Watkins,* 203 Md. 546, 548–552, 102 A.2d 274, 275–277 (1954); *Redwood Hotel v. Korbien, supra,* 195 Md. at 411, 73 A.2d at 471; *Schultz v. Kaplan, supra,* 189 Md. at 408, 56 A.2d at 20; *Smith v. Shiebeck,* 180 Md. 412, 418, 24 A.2d 795, 799 (1942); *Oberheim v. Reeside,* 116 Md. 265, 274, 81 A. 590, 593 (1911); *Bernei v. Sappington,* 102 Md. 185, 191, 62 A. 365, 366 (1905); *Whalen v. Dalashmutt,* 59 Md. 250, 252–254 (1883); *Ches. and Ohio Canal Co. v. Young,* 3 Md. 480, 489 (1853). An equitable action, by a party not in possession, to decide a disputed title or right to possession, ordinarily will not lie. *Livingston v. Hall,* 73 Md. 386, 395, 21 A. 49, 50–51 (1891).

Thus, in *Glorius v. Watkins, supra,* 203 Md. 546, 102 A.2d 274, the plaintiff filed a bill in equity alleging that the defendants were in possession of a piece of real estate belonging to the plaintiff, that the defendants were assignees under a contract to purchase the property from the plaintiff and had defaulted, that a new agreement was then entered whereby the defendants became tenants, that the defendants thereafter refused to pay rent, and that the defendants had recorded the

---

By the act of that year, chapter 420, the fictions were all abolished, and the action was required thereafter to be brought directly by the real claimant against the real defendant."

*See also* John Adams, *Treatise On The Principles And Practice Of The Action of Ejectment,* Ch. I (William Hogan edition, 1846); 3 Sir William Blackstone, *Commentaries On The Laws Of England,* Ch. XI (William Draper Lewis edition, 1898).

original contract to purchase even though they had defaulted under that contract and had entered a new agreement. The plaintiff asserted that the recording constituted a cloud on her title, and she requested the equity court to declare that she had good and merchantable title free of any interest of the defendants. After a trial, the court entered a decree granting the relief prayed for. This Court, however, reversed, stating in an opinion by Chief Judge Sobeloff (203 Md. at 549, 102 A.2d at 276):

> "The relief sought by the appellee is essentially legal, and clearly available in ejectment. While title to real estate may sometimes be adjudicated in equity on a bill *quia timet,* this is not such a case because the complainant alleged she was not in possession.... Equity entertains jurisdiction where, although the complainant fears vexatious litigation due to a cloud on his title, he nevertheless cannot sue in ejectment because he is already in possession. The ground of equity jurisdiction in such a case is that being in possession he is denied a remedy at law.

> "In the instant case complete relief could be given in the legal forum, and if the appellee should prevail in ejectment this would effectually terminate any cloud on her title which she fears from the recent recording by the appellants of the original agreement between the appellee and Haviland, and of the assignment of that agreement to them. If appellee wished additionally the incidental advantage of a specific declaration, either affirmative or negative in form, as to the status of the recorded documents, that would be available to her under [the Declaratory Judgment Act] in a proceeding for a declaratory judgment at law, but not by resort to equity."

The plaintiff in *Glorius,* simply by seeking a declaratory decree in equity, did not change the nature of the proceeding. As the Court stated (203 Md. at 548, 102 A.2d at 275),

> "[i]f the proceeding is of a legal nature, it does not become equitable when cast in the form of a demand for a declaratory decree; just as a remedy purely legal cannot be sought

in an equity court merely by invoking [the Declaratory Judgment Act]."

The Court concluded (203 Md. at 552, 102 A.2d at 277) that the plaintiff's

"remedy appropriately is not in equity, but at law, to which side of the court the case may be transferred, . . . whereupon suitable application may be made for jury trial. . . ."

One of the cases chiefly relied upon in *Glorius v. Watkins*, *supra*, was *Redwood Hotel, Inc. v. Korbien*, *supra*, 195 Md. 402, 73 A.2d 468. The *Redwood Hotel* case is quite analogous to the case at bar. The plaintiffs in *Redwood Hotel*, owners in fee simple of the hotel property, brought an action in an equity court against the lessees of the property. As in the instant case, the plaintiffs in *Redwood Hotel* sought an "injunction" ousting the tenants. They alleged that the tenants had breached covenants in the lease by not keeping the premises in good order and allowing them to deteriorate, that the tenants had failed to pay utility bills, and that the tenants had failed to pay rent. Following a trial, the chancellor issued an injunction ousting the tenants and restoring possession to the plaintiffs. Upon the tenants' appeal, this Court reversed and ordered that the action be dismissed, saying (195 Md. at 411, 73 A.2d at 471):

"The real and vital purpose sought to be accomplished by this bill is the ousting of the tenant by the landlords by means of an injunction, and all other relief prayed is incidental thereto. Considering all of the facts alleged in the bill, we are of opinion that they are legally insufficient to confer jurisdiction in equity. An injunction will not lie to oust a tenant because he is a bad tenant and worries his landlord; that his rent is in arrears; that he is surly and disagreeable; that he will not give up possession of the leased premises to his landlord upon demand to do so; and that he is insolvent. None of these acts, nor all combined, can give an equity court jurisdiction on a bill filed by a landlord to oust such a tenant from the leased premises."

In reversing an equitable decree in a somewhat similar case, this Court stated (*Blain v. Everitt*, 36 Md. 73, 80, 82 (1872)):

"It is plain the whole scope and purpose of this bill, the ultimate object it seeks to attain, is to oust the defendant of possession of the land and dwelling house. This has been done by means of a receiver and the writ of injunction in the form asked for and granted. These have been made to perform the office of a writ of *habere facias possessionem.*

\* \* \*

"If a landowner has upon his lands, by agreement or default, a negligent and insolvent tenant bound to pay rent in money or in kind, that fact cannot give a Court of Equity power to [remove] him and work the land during the tenancy by means of a receiver. To sustain a pretension like this would open a novel and most extensive head of equity jurisdiction. . . . If he is a mere naked trespasser the law also furnishes ample means of redress."

*See also, e.g., Barnes v. Webster*, 220 Md. 473, 475, 154 A.2d 918, 920 (1959) ("It is well settled that a bill to quiet title will lie where the owner is in possession. The ground of equity jurisdiction is that, being in possession, the owner is denied a remedy at law. \* \* \* Equity lacks jurisdiction where there is an adequate remedy at law to oust the possessor"); *Schultz v. Kaplan, supra,* 189 Md. at 408–409, 56 A.2d at 19–20 (where the dispute concerns the right to possession and the "legal relations of the parties arising under [a] lease," the action "is primarily that of ejectment which is a legal remedy," although a declaratory judgment action *at law* is available); *Kelly v. Nice,* 141 Md. 472, 481, 119 A. 333, 336 (1922) (affirming the dismissal of a bill in equity because "the bill is . . . 'an ejectment suit, pure and simple' "); *Helden v. Hellen,* 80 Md. 616, 619–620, 31 A. 506, 506 (1895); *Textor v. Shipley,* 77 Md. 473, 479, 26 A. 1019, 28 A. 1060, 1061 (1893, 1894) (where title or the right to possession are at issue, and the plaintiff is not in possession, "the jurisdiction of a Court of equity cannot be maintained" and "[i]f the possession is in another his [the plaintiff's] remedy is by an action of ejectment"); *Lanahan v.*

*Gahan,* 37 Md. 105, 106 (1872) (dispute between adjacent lot owners concerning property rights in a wall between their properties, with the Court stating "that the rights involved are purely legal rights, and as such should be determined by a Court of law, and not by a Court of equity"); *Polk v. Pendleton,* 31 Md. 118, 124 (1869) (" 'Those only who have a clear legal and equitable title to land, connected with possession, have any right to claim the interference of a Court of Equity to given them peace or dissipate a cloud on the title' "); *Crook v. Brown,* 11 Md. 158, 172–173 (1857).

■ Moreover, the General Assembly has no authority to create a statutory equitable action to determine "legal rights" or resolve legal disputes and thereby circumvent a party's right of trial by jury. For example, the General Assembly in Ch. 478 of the Acts of 1888 authorized an equitable action by "any person entitled to any legal character, or to any right as to any property" against "any person denying ... his title to such legal character or right," with the court empowered to "make therein a declaration that he is so entitled without any further or other relief being asked or given." In *McCoy v. Johnson, supra,* 70 Md. 490, 17 A. 387, the plaintiff filed a bill in the Circuit Court of Baltimore City (an equity court), against the persons holding "paper title" to a strip of land, for a decree declaring that the plaintiff had acquired title to the strip of land by adverse possession. The Circuit Court dismissed the bill, and this Court affirmed, holding that the plaintiff must have " 'clear, legal, and equitable title,' " coupled with possession, to bring an equitable action. 70 Md. at 492, 17 A. at 387. With regard to the plaintiff's reliance on Ch. 478 of the Acts of 1888, this Court acknowledged that the "very broad" language of the statute appeared to authorize the action, but the Court held (70 Md. at 492–493, 17 A. at 387):

> "[I]t is clear the Legislature has no power to confer on Courts of equity the jurisdiction to determine legal rights, in regard to which Courts of law exercise exclusive jurisdiction. In such cases the Constitution guarantees to suitors the right of trial by jury, and this right the Legislature cannot abridge or take away. The Act of 1888, was bor-

rowed, we find, word for word from the Code of the Indian Empire, but the British Parliament is not controlled, nor is its power limited, as is the power of the Legislature in this State, by a written Constitution. The jurisdiction then conferred by the Act of 1888, can only be exercised in regard to such matters as are properly cognizable by a Court of equity...."

Although we have largely abolished the procedural differences between actions at law and actions in equity, the essential holding in *McCoy v. Johnson*, quoted above, remains viable. It is fully applicable to the relationship between causes of action created by the Legislature and the constitutional right to a jury trial.

### IV.

In light of the settled principles discussed above, and the nature of Howard County's action, the defendant Martin was entitled to a jury trial.

### A.

Turning first to Howard County's arguments, it is clear that neither the titles of its complaints nor the labels attached to § 14–120 determine whether the action is essentially legal or equitable. As pointed out by this Court in *Glorius v. Watkins, supra,* 203 Md. at 548, 102 A.2d at 275, "[i]f the proceeding is of a legal nature, it does not become equitable when cast in the form of a demand for [an equitable] decree."

Furthermore, Howard County's repeated reliance on the label given to an action under § 14–120, namely an action "to abate a nuisance," does not even suggest a legislative intent that all actions under the statute are equitable in nature. The verb "to abate" simply means "to put an end to" or "to do away with" or "to lessen" or "to diminish" or "to reduce" or "to terminate." *Webster's New International Dictionary* (second edition unabridged, 1959). When a person is allegedly conducting on real property an activity constituting a nuisance, a complaint may seek to terminate or to reduce the activity in various ways. The complainant could request a

court order telling the person in possession to cease the activity or refrain in the future from engaging in the activity. This would be an equitable action, and the order would be an injunction. It is the type of action authorized by subsection (e) of § 14-120, and it is the type of action involved in the cases relied upon by Howard County.

On the other hand, a complainant could seek "to terminate" the activity on the property by requesting a court order "ousting" from the property the person in possession who has allegedly been carrying on the activity constituting a nuisance. Such an action, particularly by a plaintiff not in possession, is not equitable in nature. This Court has emphasized on several occasions that where "[t]he real and vital purpose sought to be accomplished by [the action] is the ousting of the tenant," the action is one at law. *Redwood Hotel, Inc. v. Korbien, supra,* 195 Md. at 411, 73 A.2d at 471. This is the action authorized by subsection (f)(1) of the statute and, being legal in nature, carries with it the right to a jury trial.

Finally, as shown by *Glorius v. Watkins, supra, Redwood Hotel, Inc. v. Korbien, supra,* and a multitude of other cases, and contrary to Howard County's argument, the particular relief sought in an action often determines whether the action is equitable or legal in nature. *See also, e.g. Tidewater v. Freight Drivers,* 230 Md. 450, 456, 187 A.2d 685, 688–689 (1963) ("The relief sought . . . was essentially legal and should have been sought in a court of law"). With respect to actions against defendants who are allegedly engaging in activity constituting a nuisance, the relief sought will determine the nature of the action. If the relief requested is an order requiring the defendant to stop engaging in the activity, the action is equitable. If the plaintiff requests money damages, or if a plaintiff not in possession requests an order ousting a tenant from possession of the property, the actions are legal, and there is a constitutional right to a jury trial.

## B.

The Court of Special Appeals, in holding that an action under subsection (f)(1) was equitable, relied on factors which

either have no basis in the statutory language or which, as a matter of general law, do not indicate that an action is equitable rather than legal.

The Court of Special Appeals stated that an order under subsection (f)(1) requiring a tenant to vacate the leasehold property "does not terminate the tenancy," would not preclude "an ousted tenant from subleasing the property or assigning his lease," could be "temporary" and "could be enforced through contempt proceedings." Neither the statutory language nor the legislative history contains a scintilla of support for this position.

The language of subsection (f)(1), authorizing a court to "order a tenant with knowledge of the existence of the nuisance to vacate the property," has no qualifications. It is unconditional. Moreover, the language of subsection (f)(2), providing for an express order restoring the property to the landlord if the tenant refuses to obey the order to vacate under subsection (f)(1), certainly indicates that the order to vacate under subsection (f)(1) terminates the tenant's leasehold interest. With regard to the Court of Special Appeals' assumption that an order under subsection (f)(1) would not terminate the tenant's interest and that the tenant could sublease the property or assign his lease, it is noteworthy that federal law flatly prohibits subleases or assignments by tenants in federally subsidized housing. *See* 24 C.F.R. § 982.551(h)(6) and (7). As to the Court of Special Appeals' view that an order under subsection (f)(1) could be temporary, when the Legislature intends that a court order be for a limited duration, it ordinarily says so. *See* the provisions of the Domestic Violence Act, Code (1984, 1991 Repl.Vol., 1997 Supp.), §§ 4–505 and 4–506 of the Family Law Article.

The legislative history of Ch. 505 of the Acts of 1991 confirms that an order under subsection (f)(1) was intended to be permanent, terminating the leasehold interest of a tenant involved with controlled dangerous substances. The Department of Legislative Reference's bill file on Senate Bill 638 of the 1991 session, which became Ch. 505 of the Acts of 1991,

discloses that the bill was introduced on behalf of the Baltimore City State's Attorney's Office. The letter from the Baltimore City State's Attorney to the Senate Judicial Proceedings Committee, dated February 13, 1991, and explaining the proposal, stated that the purpose of the order to vacate was for the "tenant" to be "removed from the community." The Senate Judicial Proceedings Committee Floor Report on Senate Bill 638 states that the provision "will deny drug dealers a base of operation" in the neighborhoods. The documents in the bill file indicate a desire to remove permanently drug dealers from neighborhoods. Regarding the Court of Special Appeals' speculation that violation of an order under subsection (f)(1) would be punishable by contempt, the legislative history shows that the House version of the bill expressly authorized contempt but that the Senate version, which became § 14–120, made no mention of contempt.

■ The Court of Special Appeals also relied on the definition of "tenant" in § 14–120, which includes an occupier of the property who is not a party to the lease. This, however, is no indication whatsoever that the action under subsection (f)(1) is equitable rather than legal. An action by or on behalf of a property owner not in possession, but who has the right of possession, to oust a person occupying the property, is an action at law regardless of whether the occupant is a tenant in a property law sense or even a trespasser. In *Fett v. Sligo Hills*, 226 Md. 190, 196–197, 172 A.2d 511, 514 (1961), this Court held that the occupants of the property were "trespassers," and that "ejectment is an appropriate remedy under the circumstances." *See also Metromedia v. WCBM Maryland*, 327 Md. 514, 518–519, 610 A.2d 791, 793 (1992) (ejectment action, with jury trial, is the appropriate action against an occupant who refused to vacate property and "became a trespasser").

The Court of Special Appeals considered an action under subsection (f)(1) to be similar to an action for a protective order under the Domestic Violence Act, Code (1984, 1991 Repl.Vol.), § 4–506 of the Family Law Article, to require an

abuser to vacate the family home. An order under the Domestic Violence Act, however, is for a relatively short period of time and does not, in a property law sense, divest the defendant of any rights in the property. Moreover, actions under the Domestic Violence Act, like equitable actions against family abusers for over 300 years,[10] are brought by or on behalf of someone who is in possession of the premises. A legal action in the nature of ejectment would not lie under those circumstances. In addition, if subsection (f)(1) did authorize an injunction against a drug dealer or abuser, similar to an injunction against one abusing his family, subsection (f)(1) would seem to be superfluous. Injunctive relief of this nature, if authorized by the statute, would seem to fall within the ambit of subsection (e).

The Court of Special Appeals' position that an order to vacate under subsection (f)(1) does not terminate a tenancy, and that only an order expressly restoring the property to the landlord under subsection (f)(2) operates to terminate the tenancy, renders the statutory scheme dysfunctional. A proceeding and order of restitution under subsection (f)(2) can only take place if the tenant violates an order under subsection (e) or subsection (f)(1). Under the Court of Special Appeals' view, where an order has been issued under subsection (f)(1), there can only be a trial concerning the tenant's property interest if the tenant violates the court order. Moreover, under the view of the court below, if the tenant complies with an order to vacate under subsection (f)(1), and leaves the property vacant, the landlord cannot bring an action under the statute to regain the premises. Everything would be in limbo. In addition, an ejectment action would not ordinarily lie where the premises are vacant. *Barnes v. Webster, supra,* 220 Md. at 475, 154 A.2d at 920; *Baumgardner v. Fowler,* 82 Md. 631, 640–641, 34 A. 537, 539 (1896).

 The framework of the statute, consistent with traditional property law, compels the conclusion that an order

---

**10.** *See Helms v. Franciscus,* 2 Bland 544, 561–562 (1830); *Bread's Case,* 2 Bland 563 notes (Chancery 1681).

under subsection (f)(1) requiring a tenant to vacate the premises terminates the tenant's interest in the property and gives the landlord the right of possession. The tenant's involvement in controlled dangerous substances is, in effect, like a breach of a lease covenant, in which re-entry is authorized upon the tenant's breach. *See Redwood Hotel, Inc. v. Korbien, supra.* If the tenant, who has breached his obligations by involvement in controlled dangerous substances, complies with an order to vacate under subsection (f)(1), there is no need for a separate proceeding and order to restore the premises to the landlord, and the statute does not provide for such proceeding. If, however, the tenant disobeys the court order and refuses to vacate the premises, the statute in subsection (f)(2) expressly provides a remedy on behalf of the landlord.

The action under § 14–120(f)(1) is an action, by a statutory plaintiff on behalf of a landlord with the right to possession, to oust the tenant who has in effect breached a statutory covenant. It is clearly in the nature of an ejectment action and, as such, carries a right to a jury trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY HOWARD COUNTY.*